# CONOVER'S CASE.

*Supreme Court; before Hon. Chas. A. Peabody; July*, 1857.

## CERTIORARI.   STAY OF PROCEEDINGS.

A common law certiorari stays the proceedings of the officer or court to which it is addressed.

In proceedings under 1 Revised Statutes, 125, § 56, by a party succeeding to an office, to get possession of books and papers appertaining to it, the issuing of the warrants after the magistrate has decided that the applicant is entitled to them, is a ministerial and not a judicial act.

A common law certiorari served after the decision and before issuing the warrants, suspends the power of the magistrate at that point.

It may not suspend the proceedings in the midst of a trial, but at the end of it its operation is to suspend them at once.

If served at any time before execution, or process in the nature of execution is issued, it stays the issuing.

An order made by the court allowing the writ, that it shall not be deemed to operate as a stay, does not alter or modify the operation of it in that respect; especially if such order is made after the writ is allowed and served.

Whether a conditional or partial allowance, so that the writ shall not stay proceedings, can be made in any case,—*Query?*

Where an application for a writ of certiorari was accompanied with an application for a stay of proceedings, which was refused,—*Held*, that the intention of the court, as shown by refusing the stay, did not change the effect of the writ.

Application for a search-warrant and a warrant of arrest.

Daniel D. Conover having been appointed by the governor to fill a vacancy in the office of street commissioner, in the city of New York, made application to Mr. Justice Peabody for an order for the delivery of the books and papers appertaining to the office, by Charles Devlin, who claimed to hold the office by appointment of the Mayor, with the consent of the Board of Alder-

men. The proceedings upon that application (which was granted), are reported Ante, 73.

Devlin thereupon procured from Mr. Justice Davies a writ of certiorari, bringing the proceedings had before Mr. Justice Peabody into the Supreme Court for review.

Conover now applied, after the allowance of the certiorari, for a search-warrant and a warrant of arrest, in execution of the order granting his application. It was objected on behalf of Devlin, that the allowance of the certiorari stayed all further special proceedings.

It appeared upon the argument that Mr. Justice Davies had issued an order that the certiorari should not be deemed, or taken to be, a stay of proceedings.

*David Dudley Field* and *William Curtis Noyes*, for the application.

I. It may be conceded, that the effect of the common law *certiorari*, when issued in a proper case and at a proper time, is to remove the record from the inferior jurisdiction, and by consequence, as that jurisdiction cannot be continued without the record of what has already been done, to suspend all further proceedings there. The original purpose of the writ was to get the case into the Superior Court, that it might be there proceeded with. (*Bacon's Abr., tit., Certiorari.*)

II. The power to issue this writ has been qualified or taken away in many cases, sometimes by express words, as in case of *habeas corpus*, before final determination (2 *Rev. Stats.*, 573, § 69), and of proceedings to remove defaulting tenants (2 *Rev. Stats.*, 516, § 47), and sometimes by implication, as in case of the act of 1820, respecting distresses, &c. (*Laws of* 1820, *ch.* 194; Lynde *a.* Noble, 20 *Johns.*, 80.)

III. Whenever a statute has authorized a summary proceeding, and the effect of the removal of the record would be to annul the proceeding altogether, the incongruity between the statute and the existence of the power to destroy its effect amounts to a repeal or qualification of the power to take away the record, or, in other words, to award a *certiorari*.

IV. If it be said that this inconsistency may be avoided by the refusal of the court to issue the writ, except in a proper case and at a proper time, the answer is obvious that the execution of

a statute does not depend upon the discretion of judges; that what is inconsistent with law the courts have no *power* to perform, and that a statute to allow a proceeding under a statute which the Legislature intended should be summary and uninterrupted, to be, nevertheless, suspended by the mistaken order of another judge, till the mistake can be corrected, would be to introduce confusion into our system, and virtually to thwart the legislative will. In the case of Lynde *a.* Noble (20 *Johns.*, 80), the *certiorari* was issued and served—no statute had expressly forbidden it—the magistrate, nevertheless, disregarded it, and proceeded, and the Supreme Court approved his conduct. In that case, therefore, the writ had no operation—the record was not removed by it—it was, in fact, illegally issued, and was justly treated as a nullity.

V. In the present case, if the record be once taken away from the judge and carried to the Supreme Court, no future proceedings can ever be had upon it; not before the judge, because he has nothing before him on which to act; nor before the court, because, though it has the record, it has not the power to proceed upon it. A *procedendo* can never issue after a return made to the *certiorari*. (*Tidd. Pr.*, 349.) It follows, therefore, that the power to issue the *certiorari* to the judge, so long as any thing remains to be done by him, is taken away by implication.

VI. Much remains yet to be done by the judge in this summary proceeding. The warrants are yet to be signed; and on the return of the second warrants, a further inquiry is to be had, and a determination made as to the books, papers, &c., to be delivered to Mr. Conover.

VII.—Such would be the aspect of the case, if the court, in allowing the writ, had not made a conditional allowance, or, what is the same thing, since modified the allowance so as to make it conditional. The right of the Supreme Court originally to grant a conditional allowance is established, so far as this court, at special term, is concerned, and *a fortiori* so far as a judge out of court is concerned. (Patchin *v.* The Mayor of Brooklyn, 13 *Wend.*, 604.)

VIII. Independent of this decision of the special term, the power to make a conditional allowance exists; and the right to make it at any time is clear. Whenever a writ is issued, the

authority of the court in it attaches ; and it may be altered and entirely set aside.

*Richard Busteed, D. E. Sickles,* and *James T. Brady*, opposed.—I. The *certiorari* is a proper mode of reviewing the decision in this proceeding.

II. A common law writ of *certiorari* like this, of itself suspends all powers in Judge Peabody, and any future act in this proceeding would be a contempt of that writ.

III. Such *certiorari* is operative at any stage of the proceedings before the inferior tribunal.

IV. But if it could only operate on some judicial determination, there is such judicial determination here, in the order made to Devlin to deliver up the books, and for his imprisonment, and for a search if he failed to do so.

V. That writ being allowed by Judge Davies, he cannot by any order qualify its effect, that effect being prescribed by the common law, which is a part of our general law, there being no statute to the contrary. A statute is necessary to prevent either the application of the *certiorari* to such a proceeding, or the effect of the *certiorari* when issued, and not an implication.

VI. If the effect of the writ could be qualified, it could only be by the Supreme Court sitting in general term, after the return of the writ, which would be on the second Monday in September next, until which time neither Judge Davies nor any other judge can interfere, and Judge Peabody has no other duty nor power than in a ministerial capacity to make a return to that writ.

PEABODY, J.—Proceedings having been instituted before me (under 1 *Rev. Stats.*, 125, § 56), to compel Mr. Devlin to deliver to Mr. Conover the books and papers pertaining to the office of street commissioner of the city of New York, on the ground that the applicant was the successor of the late incumbent to the office to which they appertain ; and the parties having been heard from day to day until July 8, 1857, and my decision having been announced on that day, that the applicant was such successor, and as such was entitled to the relief asked, that is, to the warrants provided for in that section,—one that the respondent be committed to the jail of the county until he should deliver

them, and the other that the sheriff search for said property and seize it, that it might be delivered to the applicant, as therein provided,—an order to that effect was accordingly made, reduced to writing, and signed by me on the 10th day of July.

That order was immediately served on the respondent, and delivery of the papers in compliance with it demanded, which was refused.

This refusal was followed by an immediate application for the warrants contemplated by the act, to which, by my decision, embodied in the order I had determined, he was entitled. Pending this application, and while a discussion respecting the effect of an injunction then in force, restraining the applicant from taking into his possession the books and papers, was in progress, a writ of *certiorari* from the Supreme Court was served on me commanding me to certify to that court my proceeding in the premises. The injunction has since been dissolved, and I am now asked to issue the warrants notwithstanding the *certiorari*.

The fact that this writ from its operation suspends the power of the officer to whom it is addressed is not denied by the applicant, but, on the contrary, it is admitted as a general proposition; but that such is not the effect in this particular case is insisted on several grounds—some of which seem to arrange themselves under the following heads, and which I will proceed to consider:

1. It is said that this proceeding—being in its nature summary, and intended to confer present possession merely, not to determine the ultimate rights of the parties—is not subject to the operation of this writ. And there is much good sense in the suggestion that such a proceeding should not be liable to be suspended in this manner. It does not determine the ultimate rights of the parties, but leaves them to be determined in a more grave and formal proceeding. They depend on the right to the office, for ascertaining which, ample provision was made before. The ancient prerogative writ of *quo warranto* gave contesting claimants a mode of determining controversies respecting office, conclusive in its nature on all the parties interested. In that writ in its day, as since in the action of the same name, the sovereign was the nominal and real plaintiff, while the person asserting his rights to the office, if there were such a claimant, was made a party incidentally under the title of relator, and in

fact was and is practically plaintiff, so far as the assertion and protection of his own rights is concerned; and the defendant who was called on by the proceeding to show by what authority he held the office, if unable to show sufficient warrant in law, and found not entitled to it, was, in obedience to the rights of the plaintiff (and the *quasi* plaintiff, if he was deemed entitled), ousted. The State was thus freed from the evil of an unlawful exercise of its franchise by an intruder, and a vacancy was made into which the *quasi* plaintiff or relator was inducted, if his title was approved; and if not, the office remained vacant and ready for the occupation of the person who should be duly selected and qualified to fill it. The right to the office being thus determined, the right to the books and papers appertaining to it followed it as a necessary and inevitable consequence, and thus in a grave and dignified manner the rights of the parties were ascertained and declared, and by adequate process subsequently enforced.

This proceeding, however, was not thought sufficiently speedy to answer all purposes, and accordingly to supply immediate and urgent necessities the statute under which I am acting is made applicable, by which, in a brief and summary manner, on a decision of the question of succession in fact merely, the incumbent may be put into possession of the books and papers for the time being. Thus until the title can be ultimately ascertained by the only conclusive adjudication, the person in the possession and use of the franchise, with color of title, may be placed in possession of the books and papers incident to its use.

In a case like the present, when the title to the office is in doubt, effect cannot otherwise be given to this statute without actually deciding the question of title, which, I am confident and all seem to agree, cannot have been the intent of the Legislature. To transfer to a person, not actually the incumbent of an office at the time, the books and papers incident to it, which are often indispensable to its use, would not only be to adjudge his title in the abstract, but, moreover, for practical purposes, to induct the claimant—to invest him with the office, and thus it would perform the functions of a *quo warranto* and more. It would be to decide the question of title incidentally to the question of the right to present possession of the books and papers.

Properly applied in this case, this statute enables a person in and occupying an office to get possession of the books and papers incident to it as the means of performing the duties of the place until the one actually entitled should be judicially ascertained. There would, therefore, seem to be propriety in limiting the decision of this question, in most cases, to the magistrate before whom it should originate and be heard in the first instance, or at least allowing the matter before him to proceed to its conclusion before a review should be allowed, and that was, doubtless, the intention of the Legislature in cases ordinarily arising, that a vacuum, said to be abhorrent in nature, should not occur in the administration of the duties of government. The question of temporary possession of books, &c., necessary to the performance of the duties of an office until the title can be determined, would seem to be a very suitable one to be determined very speedily, and so this act seems to contemplate that it shall be, and such is the course in practice. But that no error, however palpable, no injustice, however gross, should be corrected by a revisory tribunal in any case, does not seem necessary, nor is there any evidence to show it to have been the intent of the Legislature. All the usual means of procrastination are excluded. The time for appearing after service of process, the delays incident to formal pleadings, to formal trials in term time, indeed, all formalities are dispensed with for the sake of speed in arriving at the result. But one single mode of reviewing and correcting errors is left, and that by aid of the common law writ of *certiorari*—the venerable, hoary writ, as it was styled on the argument. This writ, even, is not a matter of strict right, but is always in the discretion of the court, and is only to be allowed in cases of a public nature, where the court sees that there is probable error, and that to review in this manner will, on the whole, be likely to conduce to substantial justice between the parties; and further, that it will do no harm to the public. This is the rule, and where it appears that injustice has probably been done, and that the error can be corrected on *certiorari*, without hardship to the party against whom the writ is asked or detriment to the public, it should be granted, and in these cases only should it be granted, say the authorities in effect. Our reports abound in cases where, after solemn argument and grave deliberation, the writ has been refused, and others, in which,

after having been granted, it has been quashed by the ablest judges, on the ground that general justice and the public interest did not call for it, or perhaps seemed opposed to it. Such is the case of the People *ex rel.* Church *a.* the Supervisors of Alleghany County (15 *Wend.*, 198); and numerous other cases are there cited to the same end. Throughout the opinion in that case, the learned judge (Bronson) treats it as a writ only to be allowed on special cause shown, and when, in the discretion of the court, it appears that substantial justice between the parties requires, and the public interest at least permits it. That was a motion to quash a writ already granted, and the court allowed the motion entirely on the ground that, on the whole, it ought not to have been granted, the public interest seeming inconsistent with it, whether the relator had sustained an injury or not. He expressly excludes all inquiry into that, and virtually, for the purpose of the argument, assumes that he might have and that there might be no other remedy for him. He says: " Whether the relator has in truth sustained an injury, I do not think it necessary to inquire; nor do I feel called upon to point out a remedy." Of this writ, he says it does not issue *ex debito justitiæ*, " but only on application to the court and on special cause shown."

From what I have said it appears, I think, that this remedy by *certiorari* is pretty well hedged about with safeguards. First, that it should appear probable that wrong has been done; second, that the error is of such a nature that it can be corrected on *certiorari;* and third, that the writ will not operate oppressively. All these should be determined by the court before the writ should be allowed, and, indeed, *it should be quashed after it is allowed, if it do not appear that all the requisites occur* in the case (15 *Wend.*, 198). This seems to me to answer the argument *ab inconvenienti* that the writ should not apply to proceedings like this, because of the danger that it would defeat the end designed by the proceeding itself. If the judgment sought to be reviewed, after careful examination, seems to be wrong, and it also seems, *after like careful examination,* that the error can be corrected by *certiorari*, and that no harm can be done by allowing the writ to take its course,—questions with the decision of which I have nothing to do, but all of which the court granting it is bound to decide in favor of the applicant before it allows it,—the application

of the writ would seem not only not inconsistent with this remedy, but there would seem to be no good ground to object to the practice on principle or in policy.   The case of Lynde *a.* Noble (20 *Johns. R.*, 80) only decides that a *certiorari* issued before trial to a justice in proceedings under the " act to amend the act concerning distresses for rent, and for other purposes," passed April 17, 1820, should be quashed, as being improvidently issued at that stage of the case.   It is far from deciding that while the *certiorari* was allowed to stand, the officer to whom it was issued might disregard it.   In that case it was prematurely issued, being before the trial, the court seem to say, and the officer did disregard it, so far as to finish the trial to be sure, but no action was taken to determine the effect of his acts, either as to himself or third persons, and, therefore, nothing is decided on that subject, and even *he* refused what I am asked to do—to issue his warrant— until the *certiorari* was quashed.   So that that case does not establish the propriety of the course pursued by the magistrate there even; and if it did, it would be no authority for the act I am asked to perform.   Indeed, it seems to be assumed throughout the opinion, that the writ did operate to suspend the powers of the officer after he had made his decision and terminated his judicial functions, leaving to be done only the ministerial act of issuing his warrant, which is exactly the condition of this case.

2. It is said that the order made by the court the day after the *certiorari* was issued and served, to the effect that said writ should not be deemed to operate as a stay of proceedings, or to interfere in any manner with the proceedings before me, prevents it having any such effect.   But if the *certiorari* the day before suspended my powers and functions, it is not easy to see how an order of this kind could restore them—the writ being still in existence.   The writ itself, of its own force (*ex-propio vigore*), when allowed and served, terminated my powers, if it had any application to disturb the proceeding at all; and while it remains unrevoked and in force as a writ, I doubt very much if its legitimate effect could be thus modified by an order of the court.   My powers are suspended, if at all, by a transfer of the proceedings from me to the Supreme Court, and a necessary consequence of this would seem to be that I am not in possession of the case, and can take no steps in it.   The allowance of the

writ was unconditional, and this order, if it have any effect, must have the effect to modify or revoke some part of it, or render it conditional, while by its terms it would seem not so much designed to revoke or qualify the allowance as to explain it, and declare or order (to quote its language) "that the writ shall not be deemed or taken" to have a certain effect supposed to follow as a legal consequence from it. What the effects of a *certiorari* are is a question of law, and is not usually to be determined by declarations even of the court allowing it. It was urged on the argument, and not denied, and perhaps I am at liberty to assume that the court, when it allowed the writ, refused to allow a stay of proceedings in addition to it. That would not alter the effect of the writ in that respect, if, as it seems, it necessarily operated of itself as a stay. The mere saying that a writ of *certiorari* or *habeas corpus*, or other process, shall not perform the functions assigned to it by law, or that one of these writs shall have the effect of the other in a particular case, cannot make such a writ operate as it is declared to, differently from its legal province. The chief, and perhaps the only direct effect of this writ, is to remove the proceeding from before the officer to whom it is issued to the Supreme Court. Can an order to the effect that notwithstanding it is removed from before him to the Supreme Court, still it remains, and shall be deemed to remain, before the officer from whom it is taken, have that effect and make it ubiquitous to that extent?

The case of Patchin *a.* The Mayor of Brooklyn (13 *Wend.*, 664), in some of its *obiter dicta* and head-notes, seems to conflict somewhat with some of these views, I am aware, but I think that nothing decided in that case does conflict materially with them.

The fatal effects of the writ to this proceeding, the fact that it terminates and, for all practical purposes, annihilates the whole matter, would be excellent ground for an argument to the Legislature to show the necessity of a modification of the law, perhaps, and could perhaps have been properly addressed to the court in opposition to the allowance of this writ in the first instance, and it may be of service on the motion to quash it, if such a motion should ever be made, but it can have but little weight with me in determining what are the legal consequences of the writ when allowed and in force.

That the court misunderstood the situation of the proceeding at the time of the allowance of the writ, and would not have allowed it if it had correctly understood it, may also be a good argument on a motion to the same court to quash it; but I cannot know the fact, and if I could, such knowledge would not properly be the basis of action by me. I am to obey the writ as it is, so long as it continues to stand, not to indulge in speculations as to what might or would have been done by the court under other circumstances. My duties depend on what the writ is, not at all on what it might have been, or what was the intent of the court at the time, even if I could know that intent, except as it is expressed by the fact of allowing it. The fact that the court refused to grant a stay of the proceedings asked in connection with it, and the fact that the same court which made the allowance has since made the order above referred to, seems to show by double proof that it was not the intention of the court that any thing having the effect of a stay should receive its sanction, and this fact would probably control on an application to that court, in which alone the impediment complained of can be removed.

3. It was urged, also, that the signing and delivery of these warrants were judicial acts, and that therefore they were not restrained by the *certiorari*. But my judgment has not only been announced orally, but reduced to writing in the form of an order, and signed by me and delivered to the applicant. I have there decided that the applicant was entitled to the relief asked —that he should have the warrants. Is it possible that the writing of these papers, and signing and delivering them, are judicial acts? And even if they were, they are, so far, separate acts, distinct from the previous proceedings at the trial, that the principle which authorizes the completion of a trial because it is begun, as in the case where the venire had been awarded (1 *Bac. Abr. tit., Certiorari*, 560; and 2 *Hawk., P. C., ch.* 27, § 30), would not apply here to justify me in proceeding. But it seems to me that it certainly is not a judicial but a ministerial act, and that, therefore, I am bound to refrain.

Finally, I see no mode of escape from the restraining influence of this writ while it remains in force. The only way of escape for the applicant seems to be through the court granting it, and to that court I must commend him. My hands are certainly

bound, and I see no hope of disenthralment save by the revocation or supersedeas of the writ itself.

I am accordingly constrained to suspend my proceedings, and decline for the present to issue the warrants.*

---

* After the decision of Mr. Justice Davies granting the motion to supersede the certiorari (see the case of The People *on rel.* Devlin *a.* Peabody, *Post*, immediately following the case in our text), the order of Mr. Justice Peabody for the delivery of the books and papers to Conover, and the warrant of arrest and search-warrant were settled and signed by the judge.

The following are the orders as drawn up by Mr. David Dudley Field, of counsel for the applicant, and amended upon argument by the judge:

THE ORDER UPON THE APPLICATION.

*In the matter of the application of Daniel D. Conover against Charles Devlin, to compel him to deliver up the books, papers, &c., in the office of Street Commissioner.*

Whereas, on the 18th day of June, 1857, at the City Hall in the city of New York, complaint was made to Charles A. Peabody, one of the justices of the Supreme Court of the State of New York, by Daniel D. Conover, setting forth, among other things, that Joseph S. Taylor, who was, in November, 1855, elected to the office of street commissioner of the city of New York, to serve for three years from January, 1856, went into his said office in said January, and continued in office till the 9th of June, 1857, when he died.

That the said Conover was, on the 12th day of said June, duly appointed and commissioned to fill the vacancy in the said office, caused by the death of the said Taylor, and had duly qualified himself, and was the successor to the said office; that the books, papers, maps and documents belonging and appertaining to the said office had come to the hands of Charles Devlin; that the said Conover had demanded the said books, maps, papers and documents from the said Charles Devlin, and that the said Devlin had withheld the said books, maps, papers and documents, and refused to deliver the same to the said Conover, and asking that the said Devlin might be ordered to show cause before the said justice why he should not be compelled to deliver the said books, maps, papers and documents to the said Conover; and whereas, being satisfied by the oath of the said Conover, that the said books, maps, papers and documents were withheld, the said justice granted an order directing the said Devlin to show cause before him on the 23d day of June last, at the chambers of the justices of the said court, why he should not be so compelled; and at the time and place so appointed, the said Conover and the said Devlin appeared before the said justice, and due proof having been made of the service of the said order, the said justice proceeded to inquire into the circumstances, which inquiry was continued before him from day to day, until this day, the matter having been thus regularly adjourned, and the said Devlin not having made oath that he has truly delivered to the said Conover the said books, maps, papers and documents, and it appearing to the said justice that the said Conover is the successor to the said office of street commissioner of the city of New York, and that the said books, maps, papers and documents are still withheld, and that the said Devlin still omits and refuses to deliver up the same. It is hereby ordered that the said Charles Devlin forthwith deliver to the said Conover all the books, maps, papers and documents belonging or appertaining to the office of street commissioner of the city of New York which have come to the hands of the said Devlin, or in default thereof, that a war-

THE PEOPLE on the relation of DEVLIN *a.* PEABODY.

*Supreme Court, First District; Special Term, July,* 1857.

CERTIORARI.—SHOULD BE SUPERSEDED, WHEN?

The writ of *certiorari* is the appropriate remedy to obtain a review by the Supreme Court of the decisions and proceedings of inferior tribunals not of record.

A certiorari is generally allowed as a matter of course, unless it is apparent to the court that injustice will be done by granting it.

The nature and course of the proceedings (authorized by 1 Revised Statutes, 125, part 1, ch. 5, tit. 6, art. 5) for obtaining the delivery to the incumbent of a public office of books or papers appertaining to such office,—considered.

Whenever after the granting of a *certiorari* it is made to appear to the court that the writ was granted before the proceedings removed by it were completely terminated, it is the duty of the court to direct a *supersedeas* of the writ to be entered.

Motion to supersede a writ of *certiorari*.

The *certiorari* in question was issued at the instance of Charles Devlin to bring into the Supreme Court for review, proceedings had before Mr. Justice Peabody under 1 Revised Statutes, 125, § 56, on an application for an order for the delivery by Devlin to one Daniel D. Conover of the books and papers appertaining to the office of street commissioner, in the city of New.York. Those proceedings are reported, Ante 73.

---

rant issue to the sheriff of the city and county of New York to commit the said Devlin to the jail of the said city and county, therein to remain until he deliver to the said Conover the said books, maps, papers and documents, or be otherwise discharged according to law. And the same being required by the said Conover, it is further ordered that on such default being made by said Devlin, a search-warrant issue to the said sheriff, or any constable of the city and county of New York, commanding him to search in the day-time the apartments and rooms occupied and set apart for the office of street commissioner of the city of New York, and wherein the said books and papers are kept, for the said books, papers, maps and documents, and to seize them and bring them before the said justice.

THE WARRANT OF ARREST.

*The People of the State of New York to the Sheriff of the City and County of New York:*

Whereas, at the City Hall of the city of New York, on the 18th day of June, 1857, complaint was made to the undersigned, one of the justices of the Supreme Court of the State of New York, by Daniel D. Conover, setting forth, among other

The People *on rel.* Devlin *a.* Peabody.

On an application for a warrant of arrest and search-warrant in execution of the order of Mr. Justice Peabody, granting Conover's application, it was objected that the allowance of the *certiorari* stayed all further proceedings before the officer to whom

things, that Joseph S. Taylor, who was, in November, 1855, elected to the office of street commissioner of the city of New York, to serve for three years from January, 1856, went into his said office in said January, and continued in office till the 9th day of June, 1857, when he died ; that the said Conover was, on the 12th day of said June, duly appointed and commissioned to fill the vacancy in said office occasioned by the death of the said Taylor, and had duly qualified himself, and was then the successor to the said office ; that books, maps, papers and documents belonging and appertaining to the said office had come to the hands of Charles Devlin ; that the said Conover had demanded the said books, maps, papers and documents from the said Charles Devlin, and that the said Devlin had withheld them, and refused to deliver them to the said Conover, and asking that the said Devlin might be ordered to show cause before the undersigned why he should not be compelled to deliver the said books, maps, papers and documents to the said Conover. And whereas, being satisfied by the oath of the said Conover, that the said books, maps, papers and documents were withheld, the undersigned granted an order directing the said Devlin to show cause before the undersigned, on the 23d day of said June, at the chambers of the justices of said court, in the City Hall of the city of New York, why he should not be thus compelled ; and whereas, at the time and place so appointed the said Conover and the said Devlin appeared before the undersigned, and due proof having been made of the service of the said order, the undersigned proceeded to inquire into the circumstances, which inquiry was continued before the undersigned from day to day until this day, the matter having been regularly thus adjourned ; and the said Devlin not having made oath that he has truly delivered to the said Conover the said books, maps, papers and documents, and it appearing to the undersigned that the said books, maps, papers and documents are still withheld, and that the said Devlin omits and refuses to deliver up the same ;—these presents are therefore to command you, the sheriff of the city and county of New York, and you are hereby commanded, to take the body of the said Charles Devlin, and commit him to the jail of the city and county of New York, there to remain until he shall deliver such, books, maps, papers and documents, or be otherwise discharged according to law.

In witness whereof, I have hereto set my hand and seal, at the City Hall of the city of New York, this ninth day of July, in the year of our Lord one thousand eight hundred and fifty-seven.

### THE SEARCH-WARRANT.

*The People of the State of New York, to the Sheriff or any constable of the City and County of New York:*

Whereas, on the 18th of June, 1857, at the City Hall of the city of New York, complaint was made to Charles A. Peabody, one of the justices of the Supreme Court of the State of New York by Daniel D. Conover, setting forth, among other things, that Joseph S. Taylor, who was, in November, 1855, elected to the office of street commissioner of the city of New York, to serve for three years from January, 1856, went into his said office in said January, and continued in office until the 9th day of June, 1857, when he died ; that the said Conover was on the

it was addressed. This objection was sustained. (See Cono-ver's case, *Ante* 182.)

A motion was now made on behalf of Conover to supersede the *certiorari.*

*David Dudley Field,* for the motion.—I. If the writ of *certio-rari* would lie at all in this case, it would enable the court only to look into the question of jurisdiction. No other errors could be inquired into upon the return. Unless, therefore, the papers on which the *certiorari* was granted show an apparent want of

12th day of said June, duly appointed and commissioned to fill the vacancy in the said office, occasioned by the death of the said Taylor, and had duly qualified him-self, and was then the successor to the said office; that books, maps, papers and documents, belonging and appertaining to the said office, had come to the hands of Charles Devlin; that the said Conover had demanded the said books, maps, papers and documents from the said Charles Devlin, and that the said Devlin had withheld them, and refused to deliver the same to the said Conover; and asking that the said Devlin might be ordered to show cause before the undersigned why he should not be compelled to deliver the said books, maps, papers and documents to the said Conover; and whereas, being satisfied by the oath of the said Conover that the said books, maps, papers and documents were withheld, the undersigned granted an order directing the said Devlin to show cause before the undersigned, on the 23d day of said June, at the chambers of the justices of said court, in the City Hall of the city of New York, why he should not be so compelled; and, whereas, at the time and place so appointed, the said Conover and the said Dev-lin appeared before the undersigned, and due proof having been made of the ser-vice of the said order, the undersigned proceeded to inquire into the circumstances; which inquiry was continued before the undersigned from day to day until this day, the matter having been regularly thus adjourned; and the said Devlin not having made oath that he had truly delivered to the said Conover the said books, maps, papers and documents, and it appearing to the undersigned that the said Conover is the successor to the said office of street commissioner of the city of New York, and that the said books, maps, papers and documents are still with-held, and that the said Devlin omits and refuses to deliver up the same. you, the sheriff of the city and county of New York, were commanded to take the body of the said Charles Devlin and commit him to the jail of the city and county of New York, there to remain until he should deliver such books, maps, papers and docu-ments, or be otherwise discharged according to law.

And the said Conover having further required a search-warrant to be issued, you, the said sheriff of the city and county of New York, and any constable of said city and county, are hereby further commanded to search in the daytime the apart-ments and rooms occupied and set apart for the street commissioner of the city of New York, and wherein the said books, maps, papers and documents are kept in said city, for the said books, maps, papers and documents, and to seize the same and bring them before the undersigned forthwith, there to be disposed of according to law.

In witness whereof, I have hereto set my hand and seal at the City Hall of the city of New York, this ninth day of July, in the year of our Lord one thousand eight hundred and fifty-seven.