## SUPREME COURT.

The People *ex rel.* John Kelly, Sheriff, &c. agt. Robert T. Haws, Comptroller, &c.

Where the subject matter of an *account* is within the *jurisdiction* of the *board of supervisors* of the county of New York, their final action thereon, in settling and allowing the same, is *conclusive*, upon the *comptroller* of that city, notwithstanding the broad language of § 6 of the act of April 15, 1857.

*Accounts* for services rendered in actions commenced by the *district attorney* of the county of New York, under § 21 of the *Metropolitan Police Act*, do not come within the *jurisdiction* of the board of supervisors of that county; they are not *county* charges, but Metropolitan district or state charges.

But where the accounts are for services in actions brought by the *commissioners of excise*, or in their name, they come *within the jurisdiction* of such board of supervisors, and on being audited and settled by that board the *comptroller* of the city is bound to pay them.

*New York Special Term, May,* 1861.

Application for a mandamus.

A. Oakey Hall, *for the relator.*

H. H. Anderson, *for the defendant.*

Sutherland, Justice.   On the 2d day of April, 1860, the relator presented to the board of supervisors of the county of New York an account amounting to $5,885.20, for services which he claimed had been rendered by him as sheriff to or for the county of New York, and were chargeable to said county; which account was examined, allowed, and settled by the board at said sum, and was afterwards by resolution of the board approved by the mayor, ordered

and authorized to be paid by the comptroller from the appropriation for "officers' and witnesses' fees."

On or about the 2d day of July, 1860, the relator presented to the said board of supervisors another account, for other services, amounting to $5,911.70, which he claimed had been rendered by him as sheriff, to or for the county of New York, and which were chargeable to said county; which account was also examined, settled and allowed by the said board, at the last mentioned sum, and was in like manner, by resolution of the board, approved by the mayor, ordered and authorized to be paid by the comptroller from the same appropriation.

These accounts, as thus allowed, with the resolutions of the said board, were afterwards presented by the relator to the defendant, as comptroller of the city of New York, and the examination and allowance thereof by the city auditor, and the approval thereof by the comptroller, and warrants for the payment of the same, demanded. The auditor declined to allow, and the comptroller refused to approve and draw his warrant for a certain class of items in the first account, amounting to $1,696, or for a certain class of items in the second account, amounting to $525, on the ground that they were not legal county charges; the first class of items being charges for summoning jurors for the court of common pleas of the city and county of New York, in certain actions brought by the district attorney, for penalties under the Metropolitan police act, and the second class of items being charges for like services, in summoning jurors in certain actions brought in the court of common pleas, for penalties, either under the act entitled "An Act to Suppress Intemperance and to Regulate the Sale of Intoxicating Liquors," passed April 15, 1857, or under the said police act.

On the 21st day of May, 1860, the relator presented to the said board of supervisors a certain other account, amounting to $3,895.96, for other services claimed to have

been rendered by him as sheriff for the county of New York, and to be chargeable to said county; of which amount $516.70 were for serving summons and complaints in said actions brought by the district attorney under the police act, and $3,378.26, the remainder thereof, for serving like process or papers in actions commenced by, or in the name of, the board of commissioners of excise, under said excise act. This account was also audited and allowed by the board of supervisors, at its full amount, and, by resolution of the board, approved by the mayor, directed to be paid by the comptroller from the appropriation aforesaid.

This account and the resolution directing its payment were also presented to the department of finance of the city; but the auditor refused to allow, and the comptroller refused to approve the same, or to draw his warrant therefor, alleging that the same was not a legal county charge.

The comptroller paid all of the two first-mentioned accounts, except so much and such items thereof as he refused to draw his warrant for, as aforesaid; but such payment was received by the relator, under an agreement between him and the comptroller, that the same should not prejudice the relator's right to claim payment of the balance of said accounts.

On an affidavit of the relator, substantially stating the foregoing facts, an order for the defendant, as comptroller, to show cause why a peremptory mandamus, commanding him to draw his warrant for the amounts remaining unpaid upon such accounts, was granted.

The comptroller appears and shows cause, and on his behalf his affidavit is read, stating substantially, among other things, as to the account or bill first in the relator's affidavit mentioned, that he refused to pay the sum of $1,696, as in that affidavit alleged; that, as appears by the said bill, and as he believes to be true, said entire amount of $1,696 is charged for services alleged to have been rendered in summoning the jury to attend the court of com-

mon pleas, at terms of the court in the months of February, March, April, May June, October, November and December, 1859—being a charge of fifty cents in each cause, for each month or term of said court, in certain actions brought by the district attorney, pursuant to § 21 of the Metropolitan police act—and that no portion of said sum is charged for services in, or with reference to, any other suits than those brought by the district attorney as aforesaid; that he (the comptroller) is informed and believes, that no proof was made to the board of supervisors that either of said causes had been noticed for trial at either of said terms; and he verily believes that said causes were not so noticed for trial at all, if at any, of said terms; and (after explaining in the affidavit how the calendar in the common pleas is made up, and the list of causes on it continued and added to) that the fact of the title of the cause appearing on the calendar is no evidence whatever that said cause has been noticed for trial, or is then pending; as to the second bill or account mentioned in the relator's affidavit, that the amount of $525 is charged for like services in summoning jurors, alleged to have been rendered in actions commenced by the district attorney under the same section of the Metropolitan police act, although alleged in the affidavit of the relator to have been commenced under the excise act. The deponent then makes a similar allegation on information and belief, that the causes were not noticed for trial or so placed on the calendar as to authorize the charges making up the $525. The deponent further states in his affidavit, on information and belief, that said suits have not been brought to judgment, and that costs have not been adjudged against the plaintiffs in said suits.

As to the third bill or account mentioned in the affidavit of the relator, the comptroller alleges in his affidavit, that the sum of $516.70 is charged for serving summons and complaints in four hundred and seventy actions commenced by the district attorney, pursuant to the same section of

the Metropolitan police act; of which sum $235 is charged for serving summons and $235 for serving complaints in the same actions; being fifty cents for serving each summons, and fifty cents for serving each complaint; said several complaints being annexed to, or served with the said summons, as the deponent believes and charges; the balance of said sum of $516.70 being for mileage in serving said summons, and complaints; that each of said actions, as he is informed and believes, is a civil action; that he is advised that the complaints were not process in said actions, and that no such sum as that charged for serving complaints is allowed by law to the sheriff, or chargeable against the county, and that none of the said sums are chargeable against the county; that he refused to draw his warrant for the sum of $3,378.26, included in the third bill or account mentioned in the affidavit of the relator, because he was advised and believed that the same were not chargeable against the county; that of said sum, $3,014 is charged for serving summons and complaints, in three thousand and fourteen actions, alleged to have been commenced in the name of the commissioners of excise, under the excise act; $1,507 thereof being for serving summons in said actions, and $1,507 thereof being for serving complaints in the same actions; the balance, $364.26, being for mileage. Similar allegations to those before made, as to the summons and complaints being served together, as to the complaints not being process, &c., are then made and insisted on to show that the said sum of $3,378.26, and no part thereof, was chargeable to the county.

It is further alleged in the affidavit of the comptroller, on information and belief, that said last-mentioned suits have not, nor has either of them been tried, and that said costs have not been adjudged against the plaintiffs therein; and that many of said suits, though commenced in the name of the commissioners of excise, were not commenced by authority of said commissioners, but were commenced as

permitted by the excise act, by some person or persons to the deponent unknown.

The question is, whether, on these facts and allegations for and against issuing the writ, a peremptory mandamus should issue to the comptroller, commanding him to pay or draw his warrant for the whole or any portion of the disputed claims of the relator.

I cannot doubt that a mandamus may issue for the payment of any one or more of the disputed claims or amounts demanded of the comptroller, or for the payment of any sum or amount less than the aggregate of the disputed claims or amounts demanded of the comptroller.

As to all of the disputed accounts or claims, the comptroller insists that they were not chargeable to the county, and that he has a right to determine or judge for himself whether they were or were not chargeable to the county. He also resists the payment on other grounds indicated in his affidavit, which I have stated quite at large.

On the part of the relator, it is insisted:

1. That the action of the board of supervisors in allowing and auditing the accounts, and adopting the resolutions for their payment, is conclusive upon the comptroller on the question whether the accounts, or the subject matters thereof, were properly chargeable to the county.

2. That if the comptroller has the right to determine whether the items of the disputed accounts were chargeable to the county, then that they were so chargeable.

The board of supervisors, in auditing and allowing accounts, are limited to the powers conferred upon them by statute.

If the subject matter of these disputed accounts was within the jurisdiction of the board of supervisors, the comptroller had no right to refuse payment, independent of the remarkably broad language of § 6 of the act relating to the board of supervisors of the city of New York, passed April 15th, 1857. (*The People* agt. *Lawrence*, 6 *Hill*, 244.)

By the Revised Statutes, the board of supervisors of each county has power to examine, settle and allow all accounts chargeable against the county. This power to examine, settle, and allow involves the right to reject. It is a judicial or discretionary power. (*The People* agt. *Supervisors of Dutchess*, 9 *Wend.*, 508.)

Where the subject matter of the account is within the jurisdiction of the board of supervisors, and in the absence of fraud or corruption, whether there is any remedy for an irregular, improper, or mistaken exercise of the power, by *certiorari* or otherwise, it is not necessary now to inquire. (*See The People* agt. *The Supervisors of Allegany*, 15 *Wend.*, 198; *The People* agt. *Supervisors of Queens*, 1 *Hill*, 195; *Moers* agt. *Smedley*, 6 *John. Ch.*, 30.)

In this case, if the subject matter of the disputed claims was within the jurisdiction of the board of supervisors, the comptroller, irrespective of the section of the act of April 15, 1857, before referred to, had no right to refuse payment on the ground that the allowance was too much, or was made upon insufficient evidence, or prematurely made. (*The People* agt. *Lawrence*, 6 *Hill*, above cited.)

The accounts are not before me, nor were they presented on the argument; but I think I must assume, on the papers before me, that it appears from the accounts on their face, that a class of items or charges in the first account, amounting to $1,696, and in the third account, amounting to $516.70, were for services rendered in actions commenced by the district attorney, under § 21 of the Metropolitan police act, or, at least, that enough appears on the face of the accounts to have led to the inquiry and knowledge on the part of the board of supervisors of the conceded fact, that $1,696 of the first account, and $516.70 of the third account, consisted of charges for services in such actions. Assuming this to be so, I think it may be said that it appears on the face of the accounts that these classes of charges or items, and, as to them, the accounts, were not within the

jurisdiction of the board of supervisors; that it appears on the face of the accounts that they were not county charges, but Metropolitan district or state charges.

These actions, under § 21 of the Metropolitan police act, must have been brought to recover penalties for the benefit of the police contingent fund, authorized by that act, for no other actions are authorized by that section. This fund is either the fund mentioned in § 24, called the "police life and health insurance fund," or that named in § 27, called "police fund," as no other funds are authorized by, or mentioned in the act. The fund first named is for the benefit of any and all policemen of the Metropolitan police district, and to be invested by the comptrollers of the city of New York and Brooklyn, who are made trustees of the fund; the moneys which constitute the fund mentioned in § 27 are paid into the state treasury, and are to be paid therefrom, for the fiscal purposes of the Metropolitan police act.

The Metropolitan district, established by the act, is a new geographical and governmental division of territory, composed of several counties, theoretically cemented together by the words of the act, and the decision of the court of appeals determining its constitutionality.

Actions under § 21 of the Metropolitan police act are to be brought by the district attorney, in the name of the people of the state.

By the Revised Statutes (2 *R. S.*, 552, §§ 13, 14,) the costs in the action, when adjudged against the people, would have been a charge upon the state treasury. This provision of the Revised Statutes was altered by the laws of 1832, ch. 246, sec. 3, by which it was provided that the costs, whenever adjudged against the people in such suit, if the matter in controversy will belong to any particular county, city, town or village, shall be a charge against such county, city, town or village.

It is true that the district attorney is a county officer,

and in the performance of his general duties acts as a county officer, and that the Revised Statutes (1 *R. S.*, 385, § 3, *subs.* 9, 15,) provide that the moneys necessarily expended by any county officer, in executing the duties of his office, and the contingent expenses necessarily incurred for the benefit of a county shall be deemed county charges; but, in bringing the actions under the Metropolitan district act, the district attorney acted for the benefit of the Metropolitan police district or the state, and I think that in bringing and conducting these actions he should be considered an officer of the Metropolitan police district. or state.   It is clear that New York, as a county, could not be benefited by the suits, and was in no way interested in them, for the penalties, when collected, would go into the state treasury, or into the Metropolitan police district "police life and health fund."   The general principle no doubt is, that the services rendered for the benefit of a county shall be contingent charges against the county.   (*Brady* agt. *The Supervisors of New York*, 2 *Sandf.*, 472, *and cases there cited.*) But the services in the actions brought under the Metropolitan police act were not rendered for the benefit of the county of New York alone, or as a county; and, for the reasons above stated, I think the board of supervisors had no jurisdiction of the relator's accounts as to the items or charges for services or fees, in the actions brought under the Metropolitan police act.

Having no jurisdiction, the auditing and allowance and resolution directing payment, by the board of supervisors, as to these disputed items or charges, were simply void. The comptroller could raise the question of jurisdiction without the aid of § 6 of the act of April, 1857; and if he had not raised it, the court, on its own motion, would be compelled on that ground to deny the mandamus as to these disputed items or charges.   (*The People* agt. *Lawrence*, 6 *Hill, before cited.*)  ·

The mandamus is therefore denied as to the sum of ·

$1,696 in the first account, and $516.70 in the third account, conceded to be for charges or fees for services in actions under the Metropolitan police act.

As to $3,376.26, the balance of the third account, for serving summons and complaints in actions brought by the commissioners of excise, or in their name, I think the subject matter of this part of the account was clearly within the jurisdiction of the board of supervisors; and that the mandamus as to that part of the account should be granted, notwithstanding the broad language of § 6 of the act of April 15th, 1857.

The commissioners of excise are county officers. The actions must be presumed to have been brought for the benefit of the county. By § 22 of the excise act, the penalties for the recovery of which the actions were brought, when recovered, are to be paid over to the treasury of the county, for the benefit of the poor of the county. The subject matter, therefore, of this part of the account was within the jurisdiction of the board of supervisors. The subject matter of the charges or items making up this sum of $3,376.26 was or might be a county charge. It may be that the supervisors prematurely audited and allowed this part of the account, or allowed too much, or upon insufficient evidence, or without proper inquiry as to the condition of the actions, or as to whether they had been commenced with the knowledge or at the instance of the commissioners of excise, or not. It may be, that regularly, the attorney of the commissioners in the actions was primarily liable to the sheriff, and the commissioners to their attorney; and that the costs in the actions should not have been allowed to the commissioners until they had been actually expended or paid by them—but the subject matter of this part of the account being within the jurisdiction of the board of supervisors, the question is, whether the action of this board, in auditing and allowing and directing the payment of this part of the account, was not conclusive upon

the comptroller, so that he could not raise any question as to these matters, or any of the questions indicated in his affidavit, except that of jurisdiction.

The discretionary nature of the power vested in the board of supervisors to examine, settle, and allow all accounts chargeable against the county, would appear to be inconsistent with a right on the part of their fiscal agent, or disbursing officer, to question the regularity or propriety of the exercise of their discretionary power, or indeed any question except that of jurisdiction.

The question then is, whether the act of April 15th, 1857, before referred to, has repealed or modified the provision of the Revised Statutes vesting in the board of supervisors this full discretionary power, so that the comptroller could or can, in this case, raise any of the questions indicated in his affidavit, or suggested in his behalf on the argument, except that of jurisdiction.

The first sentence of § 6 of the act declares, that the finance department of the mayor, &c., of the city of New York, and its officers, " shall have the like power, and perform the like duties, in regard to the fiscal concerns of said board, (the board of supervisors of the county of New York,) as they possess in regard to the local concerns of the said mayor, aldermen, and commonalty."

The 22d section of the act amending the charter of the city, passed the day previous, April 14, 1857, constructs the finance department of the city ; declares, that its chief officer shall be called " the comptroller of the city of New York," and that it shall have a bureau called the " auditing bureau," whose chief officer shall be the " auditor of accounts ;" and also declares, that this department of finance " shall have control of all the fiscal concerns of the corporation," &c., and that " it shall settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned, either as debtor or creditor."

Now, it must be conceded that the language of the first sentence of § 6 of April 15, 1857, taken literally, when read in connection with § 22 of the act amending the charter, is broad enough to give the officers of the finance department of the city an absolute supervisory power over the acts of the board of supervisors, in examining, settling and allowing accounts against the county, although the " fiscal concerns" of the county of New York are just as local as the " fiscal concerns" of the city of New York, the county and city covering the same territory. To allow this broad meaning to this sentence would, in effect, be giving to the officers of the finance department of the city an absolute veto check over the discretionary power of the board of supervisors, although the interests of the city and county are the same, and although, by a provision of the same act of April 15, 1857, the mayor of the city has a qualified veto power over " every act, ordinance or resolution" of the board of supervisors, " except such as levy any special tax or taxes." It may be difficult to say what the first sentence of the act of April 15, 1857, does really mean; but I cannot think that it was intended to effect so extraordinary a purpose.

The language of the succeeding sentence of § 6 of the act of April 15, 1857, is broad and vague, but I think it should be considered as qualifying the previous sentence. It declares that " all moneys drawn from the treasury, by authority of the board of supervisors, shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor, and approved by the comptroller," &c. The power to examine, settle and allow accounts is one thing, and the power to examine, allow and approve vouchers is another thing. The word voucher would seem to mean or imply evidence, written or otherwise, of the truth of a fact— that the service had been performed, or the expenses paid or incurred—not evidence of a legal or mental conclusion on the question, whether the service or expenses, assuming

the service and the expenses to have been in fact performed, paid, or incurred, are properly county charges, or are properly allowable when the account for them is presented for allowance, or should be allowed to A. B., or to C. D.

Now, the comptroller makes no question that the services for which the sum of $3,378.20, in the aggregate, is charged, have not been performed.

When payment was demanded, he put his refusal on the ground that the accounts, or subject matters of the accounts, were not legal county charges.

But if the word vouchers, as used in § 6 of the act of April 15, 1857, should be extended to mean proper evidence of the action of the board of supervisors, in auditing and allowing and directing the payment of the accounts, what other or further evidence of such action could the comptroller or auditor have or require, than the accounts themselves, with the resolutions of the board, duly approved by the mayor, allowing them and directing their payment.

My conclusion, then, is, that the comptroller had no right under § 6 of the act of April 15, 1857, or otherwise, to refuse payment of $3,376.26 of the third account mentioned in the affidavit of the relator, conceded to be for services in actions brought by, or in the name of the commissioners of excise; and that as to that sum, and part of the disputed account, the mandamus asked for should be granted.

As to the disputed sum or amount of $525, of the second account mentioned in the relator's affidavit, the papers before me leave me in doubt whether the services for which that sum is charged were in actions commenced by the district attorney under the Metropolitan police act, or in the name of the commissioners of excise under the excise act. The relator in his affidavit says the actions were brought under the excise act; and the comptroller in his affidavit says they were brought under the police act. The comptroller has the accounts. Here is a mistake of fact on one side or the other, which can easily be corrected; but it

would not be proper, I think, to grant the mandamus as to this sum on these papers.

But as to this disputed sum of $525, the mandamus is denied without prejudice to the right of the relator to renew the application upon satisfactory evidence that the services for which that sum was charged were in fact rendered by the relator in actions brought under the excise act, or were charged by him, and allowed by the board of supervisors, as rendered in such actions.

Neither party should have costs on this motion. If I am correct in my views of the questions, the relator demanded payment of more than he was entitled to demand of the comptroller; and the comptroller refused to pay a large portion of the third account mentioned in the relator's affidavit, which he ought to have paid.