Fahcher, J.
—The relator moves for a mandamus to the auditor, to audit and allow, and for a like writ to the comptroller, commanding payment of, his claim of two hundred and forty dollars, for his compensation as assistant janitor of the new county court-house.
He swears that on May 1, 1870, he was appointed assistant janitor of the new county court-house, by the court-house commissioners, and that his compensation was fixed at three dollars per day ; that he thereupon entered upon the performance of the duties of the position, and faithfully performed the same, to June 1, 1871, when he ceased, because payment for his services was refused.
He further states that he was paid for his services, up to December 1,1870, and also for the months of February, March, and April, 1871 ; but for December, 1870, and January and May, 1871, he has not been paid.
His affidavit further shows, that on December 9, 1872, the board of supervisors audited and allowed his claim at two hundred and forty dollars, and directed the comptroller to pay the same from the proper appropriation.
It is further alleged in the moving papers, that, of the appropriation for cleaning and supplies for county purposes for the year 1872, there remained unexpended on December 21, 1872, the sum of eighteen thousand one hundred and thirty-two dollars and fifty-two cents, and of the appropriation, for like purposes, for the year 1873, there remained on September 12, 1873, unexpended, eight thousand seven hundred and eighty-three dollars and fifty cents, from which appropriations the relator’s claim could be paid ; but, after proper demand, the auditor has refused to audit, and the comptroller has refused to pay the claim.
The auditor, in answer to the relator’s affidavit, states, that the relator’s name is not on the pay rolls of the *66 commissioners of the court-house, for December, 1870,. and January and May, 1871; and that he was not recognized by the commissioners as their employee during that time; also, that there is no. money in the-treasury, appropriated, or legally applicable, to the-payment of the relator’s claim.
It appears, on reference to the printed proceedings of the supervisors (p. 339) that a special committee was appointed on June 34, 1873, to inquire into and report to the board, as to all claims which may be fairly due-for labor of employees, who have actually rendered service in the maintenance of the new court-house, under the direction of the court-house commissioners. On December 9, 1873, the special committee reported that they had adjusted the claims of certain persons who had presented themselves before the committee, and they submitted a resolution that the claims of seven persons, for certain specified sums, among them “ Patrick Martin, assistant janitor, two hundred and forty dollars,” “for services in the new county court-house, be audited and allowed at the above amounts, and the controller directed to pay them from the proper appropriation.” The resolution was adopted by an unanimous vote.
A provision was contained in chapter 590 of the Laws of 1857, which is similar to that contained in. chapter 190 of the Laws of 1870, to the effect that the-finance department of the city shall have the like powers- and perform the like duties in regard to the fiscal concerns of the board of supervisors, as the department possesses in regard to the concerns of the corporation of the city of New York ; and that all moneys drawn from the treasury by authority of the board of supervisors, shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor, and approved by the comptroller.
It has been contended that this statute of 1870, sub *67 stitutes the auditing power of the comptroller for that of the board of supervisors, or is concurrent with it. 1 do not assent to the proposition.
It must be conceded, that were it not for the statute just quoted, the audit and allowance by the supervisors of a claim, which is a proper and legal county charge, would be conclusive, and the finance department would thereupon be obliged to pay it (1 Men. Stat., 367, § 4, subd. 2; 1 Ren. Stat., 5th ed. 848-, People v. Lawrence, 6 Hill, 244; People v. Supervisors of Dutchess, 9 Wend., 508). But the statutes of 1857 and of 1870, have unquestionably thrown a new safeguard around the treasury.
It is, that all moneys drawn from the treasury by authority of the board of supervisors, shall be upon noueJiers for the expenditure thereof.
This conclusion is supplied in the present case, by the relator’s bill for three months services duly audited and allowed by the supervisors.
In this case, the auditor has not examined and allowed the voucher, nor has the comptroller approved of it. Such audit, allowance and approval are essential prerequisites to the payment of the claim (People ex rel. Ellis n. Flagg, 15 How. Pr., 554; People ex rel. Brown v. Green, 2 Supreme Ct. (T. & C.), 18, 23).
Yet where the relator has been properly employed; has rendered the services required, and his claim has been audited, approved and ordered to be paid by the board of supervisors, he has not only a just claim against the county, but a right to have his voucher audited, allowed and approved, and to have his claim paid by the finance department. The case last cited is authority for such proposition.
If the case of Ellis {supra), be supposed to be an authority against the proposition, it may be answered, there is a later authority in favor of it (People ex rel. Brown v. Green supra.
*68 Judge Comstock, in People v. Flagg (17 N. Y., 588), in relation to a claim against the city, said: 1 ‘ the comptroller could not be compelled to draw his warrant until the claim was audited, according to law. The due employment of the relator by the common council, or their recognition of his services, gave him a :just claim against the.corporation, and a right to have his account audited in the manner provided.”..... “The adjustment of the amount belonged to the auditing bureau in the department of finance, and if that department or bureau should refuse to audit it, a mandamus would be an appropriate remedy to compel them to do so.”
“ When the claim is thus audited, it is presumed that.the comptroller can be compelled by mandamus to draw his warrant for the sum allowed.”
The reasoning of this decision is consistent with just principle, and . is applicable to the present case. The auditing bureau in the finance department can not arbitrarily refuse to examine and approve the proper voucher for an audited claim, nor can the department refuse to approve or pay such a claim. The auditing .bureau can not reverse the action of the supervisors.
When the amount has been ascertained and fixed by the board of supervisors, and the services for which the claim was made, have been rendered to the county, it. is not competent for the auditor to refuse to audit the voucher, nor for the comptroller to refuse to approve it. or pay the claim.
- The intention of the statute plainly is not to substitute the auditor for the supervisors ; but it is to grant -to him power to audit the voucher for claims on the treasury, so that he may examine and ascertain whether they have been audited and allowed by the supervisors. If s.o audited, the voucher thereof should be produced to. the finance department-. There maybe an audit and allowance by the supervisors, where the amount has *69 not been extended; e. g., their audit of a janitor’s claim may fix his compensation at a specified sum-.per month, for certain specified months.
The auditor’s duty would be toextend or -state the aggregate sum allowed to the claimant, so that the summation of the claim should appear and the voucher -be .-udited at the proper sum; but he clearly would have no power to change the rate to another sum per month, nor to refuse to audit the voucher at all.
The board of directors is by law charged with the management of the affairs of a corporation, as supervisors are of the affairs of a county.
Should the directors employ a janitor, fix his salary, and, after a term of his service, audit his bill, and direct that it should be paid, would it be contended that an auditor of the vouchers for claims against the corporation, and its cashier, though t.he former were empowered to audit the vouchers, and the latter to approve the same, could overrule or reverse the action of the directors as to the merits of the claim.
The language of Judge Comstock would be applicable to such a state of facts in respect of a county charge. Should the auditing bureau refuse to audit, or the disbursing officer refuse to pay, “a mandamus would be an appropriate remedy to compel them to do so.”
In People ex rel. Kelly v. Haws (12 Abb. Pr.H 192 ; S. C., 21 How. Pr., 117), it was held that the provisions of the act of 1857 did not give the comptroller power to examine and disallow county charges, which had already been examined and allowed by the board of supervisors ; and that the power in respect to such claims was limited to the examination of the vouchers. That decision is sustained by the literal and grammatical construction of the law of 1870.
The language is “ all moneys drawn from the treasury by authority of the board of supervisors, shall be upon *70 -'vouchers for the expenditure thereof, examined and -allowed by the auditor, and approved by the comptroller.’ ’
i;- That is, when the board of supervisors, by the authority vested in them, have ordered a county charge to be paid, there shall be presented to the auditor the pro'per voucher for the expenditure, which he shall examine, and, if sufficient, shall allow, and the comptroller shall approve of the same before the money is paid. 'The check intended by this statute is one to prevent payment without proper vouchers.
It certainly was not the intention of the statute to Substitute a new government in county affairs, or make "the board of supervisors subordinate to an auditor, or •to the fiscal officer of the treasury.
' As was well observed by Mr. Justice Sutherland, in the case last cited, “the discretionary nature of the power vested in the board of supervisors to examine, settle and allow all accounts chargeable against the county, would appear to be inconsistent ■with a right on the part of their fiscal agent, or disbursing officer, to question the regularity or propriety of "the exercise of their discretionary power.”
■See also, People ex rel. Brown n. Green, above cited. In the People v. Supervisors of Delaware County (45 JST. 199), it was held, that charges for services rendered to the county, “could be collected in one way -only. The account of them must be presented to the board of supervisors of the county, which alone ha the power to examine, settle and allow, and to raise the •money by tax with which to defray the same.” ■
It was also said, in that case, “the. court has the power to decide whether a rejected claim is a legal claim against the county ; and if it be a legal claim, it may instruct and guide the board of supervisors by mandamus, in the execution of their duty.’ ’
•'" • The board of supervisors derive their powers of local *71 legislation and administration from the constitution and laws of the State ; and their action, as to county affairs, within the limits of their jurisdiction, is not subject to revision by the fiscal officers of the treasury.
Sec. 17 of art. 3, of the constitution, provides : “ The legislature may confer upon boards of supervisors of the several counties of the State, such further powers of local legislation and administration as they shall from time to time prescribe.” Among the general powers conferred by statute on boards of supervisors, it is provided (in 1 Rev. Stat., 5th ed., p. 848), that they shall have power “to examine, settle, and allow all accounts chargeable against such county; and to direct the raising of such sums as may be necessary to ■defray the same.”
Boards of supervisors in auditing and allowing .accounts, are limited to the powers conferred upon them by statute ; but, if the subject matter of the account be within their jurisdiction, and they allow it, the county treasurer has no right to refuse payment on .the ground that the allowance was for too much, or was made upon insufficient evidence.
Tliis principle has been deliberately decided (People ex rel. Merritt v. Chamberlain of N. Y., 6 Hill, 244; People ex rel. Onderdonk v. Supervisors of Queens Co., 1 Hill, 195, 200).
Their act in examining and allowing accounts chargeable to the county, is a judicial act, and their decision is binding upon all parties concerned (People v. Stocking, 50 Barb., 573 ; S. C., 32 How. Pr., 48 ; Weaver v. Deafendorf, 3 Den., 117; Chase v. County of Saratoga, 33 Barb., 603; People v. Supervisors of Livingston, 26 Barb., 118).
If their decision be wrong, it can only be reviewed by a court of competent jurisdiction. It is not subject to revision by a fiscal officer of the treasury.
I, therefore, think that the claim of the relator, when *72 it was examined, audited and allowed by the board of supervisors, and was by them ordered to be paid, became a legal and valid liability against the county. A fiscal officer, can not thereafter become recusant, and1 refuse to audit the voucher or to pay the claim.
When the supervisors have decided that the relator, as an employee of the county, had performed services1 for which he was entitled to be paid two hundred and forty dollars, it is no answer for the finance department to return that the name of the relator was not on the pay roll for the three months of such services, nor that the commissioners of the court-house did not recognize-him.
The technical omission of his name on the pay roll is of no importance, provided he actually rendered the service for which he was employed, as the .supervisors have adjudged he did ; and the alleged want of recognition by the commissioners of the court-house is-answered by the decision of the supervisors adjudging that the relator performed the duties of his appointment for the time mentioned.
The auditor states, in his affidavit, “ that there is no-money in the treasury appropriated or legally applicable to the payment of the relator’s claim.”
It is shown by the relator’s affidavit, and not denied,, that an unexpended balance of eighteen thousand one hundred and thirty-two dollars and ■ fifty-two cents remains in the treasury for cleaning and supplies for county purposes for the year 1872, and an unexpended balance of eight thousand seven hundred and eighty-three dollars, on September 12, 1873, for like purposes, out of which balances of appropriations the relator’s-, claim can be paid.
It is, therefore, only a legal conclusion of the auditor to assert that there is no money in the treasury appropriated or legally applicable to the payment of the. relator’s claim.
*73 The fact is not denied that moneys are in the treasury, from which the claim can properly be paid, and the relator’s affidavit specifies the f and.
The motion for a mandamus to the auditor to audit the voucher, and to the comptroller to approve the same and pay the claim should be granted. The order to be settled on two days’ notice.