NEW-YORK,
May, 1836.

The People
v.
Supervisors of
Allegany.

THE PEOPLE, on the relation of Philip Church, *vs.* THE
SUPERVISORS OF THE COUNTY OF ALLEGANY.

A *certiorari* to the *supervisors of a county* to remove the *assessments* for
*county charges* will not be sustained ; *so held* in this case, in which, even
after a return to the writ, the *certiorari* was quashed.

The writ of *certiorari*, when used for the purpose of reviewing the acts and
decisions of special jurisdiction created by statute, and which do not pro-
ceed according to the course of the common law, such as *boards of supervi-
sors*, commissioners of highways, and the like, does not issue *ex debito jus-
titiæ*, but only upon application to the court and special cause shown.

A CERTIORARI was directed in this case to George Miles and
25 other persons by name, designating them as supervisors of
the several towns of the county of Allegany, and as forming the
*board of supervisors* of that county at the annual meeting of
the board in the month of November, 1832, requiring them to
send to this court the decisions and orders made by them at
such annual meeting, allowing any account as *chargeable
against the county,*and directing the raising of money to defray
the same ; also any assessment rates corrected by them and
delivered to the collector of any town of the county, contain-
ing any sums therein set down as the *valuation of the real and
personal estate of Philip Church,* and any sums set down to be
paid *as a tax on the real and personal estate of Philip Church,*
together with the warrant annexed to such assessment roll,
authorizing the collection of any such tax upon the real and
person estate of Philip Church. The *certiorari* was tested
13th July, 1833, and was made returnable at the succeeding
October term. On the 9th November, 1833, a return to the
*certiorari* was filed, which being objected to by the relator,
the same was ordered by this court to be amended by expunging
certain portions thereof, and by directing a specific return to
certain particulars omitted in the return made. In pursuance of
which order *the supervisors of Allegany for the year* 1832 con-
vened *in June,* 1834, and made an addional return, *specifying
particularly the accounts of the supervisors themselves and the
allowances thereof ;* and certifying that there were not remain-
ing on the files of the clerk of the board any *assessment rolls*

containing the situation of the real or personal estate of Philip Church ; and that neither the board or any member thereof had any custody or control over such assessment rolls, the same having previous to the 15th December, 1832, been delivered by the several supervisors either to the clerk or collector of their respective towns. On the filing of the amended return, the relator gave notice to the supervisors that he would apply to this court that the *assessment* and *apportionment of taxes* made by them at their session in November, 1832, for *county purposes*, upon the real and personal estate in the county of Allegany, and *particularly upon the real and personal property of Philip Church*, be vacated, quashed and annulled, as altogether void for irregularity ; and that *all warrants* issued for the collection of any tax directed to be collected by the said supervisors, so far as the same relate to taxes for county purposes, and *particularly so far as they affect Philip Church*, or his *real or personal property*, be vacated, quashed and annulled, for irregularity, and for such other and further relief as the court should think proper to grant.

The case was accordingly brought on to argument at the last January term. *On the merits* it was insisted by the counsel for the relator, that the supervisors had presented accounts as due to themselves, containing charges for services rendered, for which by law they were not entitled to compensation, and yet that such accounts had been allowed by the board of supervisors, and directed to be levied and collected as part of the *county charges.* The principal question however discussed was, whether the court ought to entertain the proceeding and review the decisions of the supervisors *on the merits*, or whether the *certiorari* should be quashed. It was conceded by the counsel for the relator, that the same order might be made in this stage of the case, as would be proper on a direct motion to quash or supersede the writ.

*J. C. Spencer*, for the relator, contended that the general principle was, that the king's bench in England, and the supreme court in this state, would examine the proceedings of all inferior jurisdictions, by *certiorari*, to ascertain whether they had confined themselves within their jurisdiction. He referred

NEW-YORK, May, 1836.

The People v. Supervisors of Allegany.

to *Rex* v. *Inhabitants of Glamorganshire*, 1 *Ld. Raym.* 580, which was the case of a certiorari to remove the proceedings of commissioners to build a bridge in Wales; 1 *Salk.* 145, to commissioners of sewers for all orders or proceedings before them. The principle, he said, is asserted and maintained in this court, in *Starr and others* v. *The Trustees of Rochester*, 6 *Wendell*, 564, where it is held that the court has the power at common law to review the proceedings of all inferior tribunals, and all *decisions* made by them, but not their determinations on questions of fact; and in the same case it was further held, that although a party has his remedy by action, yet he may have a reversal of the proceedings by certiorari.

The cases, the counsel said, in which this jurisdiction has been exercised are numerous, but he selected the following as bearing most upon the questions in this case. *Le Roy* v. *Corporation of New-York*, 20 *Johns. R.* 430, to remove and *correct* an assessment of the corporation of New-York for opening a *sewer.* In 2 *Wendell*, 395, a certiorari was awarded to the trustees of Brooklyn, to correct the assessment of expenses of opening a *street*, that the principle on which the assessment was made might be corrected. In 7 *Cowen*, 158, a certiorari was directed to the corporation of New-York to remove their proceedings in opening streets. In *Smith* v. *Odell*, 2 *Wendell*, 287, it was decided that a certiorari would not lie to the trustees of a school district to review their proceedings or those of the district meeting, because there was an appeal; but that it would lie to the commissioners after they had heard the appeal. The case of *The Columbian Company* v. *The Trustees of Hoosick Falls*, reported in 7 *Wendell*, 508, to which an important addition is made at p. 665, is analogous to the present. After argument whether it was a proper case for a certiorari, one was allowed to the trustees of the village to bring up their proceedings in relation to the imposition of a *village tax.* The *authority* of the court to award the writ cannot be questioned. It is admitted that it is a discretionary power; but by this term is meant legal discretion, a discretion governed by legal principles and adjudged cases. But it is denied that the probability of numerous suits being the consequence of the setting aside an illegal act, furnishes any reason whatever for the re-

fusal of the writ. The public, as a body are not concerned in the number of suits by and against indviduals. There should be some reason affecting the public at large, for declining a jurisdiction essential to the protection of private right. There is no other mode of redressing the evils complained of in this case; and, if this remedy is denied, supervisors are above the law. The case of *Rex* v. *King*, 2 *T. R.* 234, and *Rex* v. *Inhabitants of Utoxeter*, 2 *Strange*, 932, where the court refused the writ, are not applicable and furnished no ground for refusing it in the present case. In the one case, the court says that the poor may suffer if the poor rates are not raised; and in the other, that the public interest will be prejudiced if the land tax be not collected. This argument cannot apply here. The money directed to be raised by the supervisors has been collected and paid over; the poor will not starve, nor will the public officers remain unpaid. The same objection might have been made to the certiorari to the trustees of Hoosick Falls, in 7 *Wendell*. The village tax was as essential to its interests as the county tax is to the county of Allegany. As much inconvenience and delay would be produced in the one case as in the other. Nor can any difference in principle be perceived, between the cases where the opening of public streets, the opening of sewers, the laying out of highways, may be affected by the issuing of the writ, as much or more than the proceedings in this case by the allowance of the certiorari. Sewers are absolutely necessary for public health; streets and highways are often necessary, always of the greatest utility. No distinct line of demarcation can be drawn between the cases already decided in this court and that now under consideration. It is denied that any *public* inconvenience will flow from the practice of reviewing in his manner the decisions of boards of supervisors. It is supposed the court cannot decline jurisdiction of a subject, merely because it may give rise to litigation and increase the business of the court. This slight public inconvenience is more than balanced by the consideration that if the proposed remedy fails, there is none known to the law. A mandamus is wholly inapplicable, as the supervisors have already acted, and those who were to decide on the items ob-

NEW-YORK,
May, 1836.

The People
v.
Supervisors of
Allegany.

jected to, are out of office. An indictment would not lie without proof of malicious intent. A civil action against the collector would be futile, as he is protected by his warrant. An action against the supervisors would be a doubtful remedy while their orders and decisions remain in force. Besides, in the Rochester case, already quoted, this court held that it is no answer to an application for a certiorari that an action would lie.

It is no objection that the assessment rolls are not before the court. They are in hands that cannot be reached by the writ, and they are the mere process, the execution, containing the warrant of collection and indicating the sums to be collected, founded upon the decisions of the board of supervisors allowing charges against the county, and directing the total amount to be levied. These decisions are before the court, and they are subject to review here within the principle decided in the Rochester case before quoted.

The counsel then urged objections to various charges allowed by the board of supervisors, which appeared from the returns of their votes and proceedings made by them; but as the court did not pass on these objections, they are omitted.

The counsel urged that the relator was entitled to have the order and decisions of the board of supervisors, which were illegal, reversed and quashed, and if the warrants of collection could not be reached by this writ, it would remain for the relator to determine upon the next step in order to be indemnified for the injury he had sustained by the illegal acts of the board. He asked now to have those acts reviewed. The terms of the notice, he said, are general, not only to quash the order, assessments and warrants, or any of them, but for such relief as the court could grant.

*A. Taber & M. T. Reynolds*, for the supervisors, supported the charges allowed by the board of supervisors, by reference to the statutes, and to various decisions of the court in analogous cases, sanctioning allowances to public officers for services rendered in pursuance of the requirements of the law, although no provision was made in the statutes for compensation; but they principally insisted that although this court had the power of awarding a *certiorari* to all inferior tri-

bunals, still, whether they would do so or not, was a matter of sound discretion, and they urged that the *certiorari* in this case should not be sustained, as involving intolerable mis- chiefs, and although granted, and a return thereto made, that it ought now to be quashed. In support of the latter position, the following cases were cited : 1 *Strange*, 393, 2 *Id.* 932 & 975, 2 *T. R.* 234, 2 *Caines*, 182, 1 *Burr.* 485, *Sayres' R.* 6, *Caldicot's R.* 309.

*By the Court,* BRONSON, J. The power of this court to re- view the judgment and proceedings of inferior tribunals, for the purpose of seeing that they keep within the jurisdiction that has been assigned to them, and that their judgments and decisions are based upon correct legal principles, has not been, and cannot be questioned. But it was said on the ar- gument, that awarding a writ of certiorari in a case like the present, was a matter resting in the sound discretion of the court ; and the principal question discussed was, whether we ought to entertain this proceeding, and review the decisions of the supervisors on the merits, or whether the certiorari should be quashed ; and it was conceded that the same order might be made in this stage of the cause, as would be proper on a direct motion to quash or supersede the writ.

That this preliminary question, in its direct and ultimate consequences, is one of very considerable importance, will be readily perceived on looking at the requirements of the writ, and the judgment which the relator asks to have pronounced upon the return. The certiorari, among other things, re- quires the supervisors to return all the corrected assessment rolls of the several towns in the county, containing any valu- ation of the real and personal estate of the relator, and the sums therein estimated and set down, to be paid as a tax by the relator, together with the several warrants issued for the collection of the same. The judgment which the relator con- ceives himself entitled to ask upon the return is, that the apportionment of taxes made by the supervisors at their an- nual meeting in November, 1832, for county purposes, and all the warrants issued by them for the collection of the taxes, and particularly so far as they affect the relator or his real or

personal property, be vacated, quashed and annulled for irregularity.

The suggestion in the notice that the judgment may be restricted to such taxes as were designed for *county purposes,* can be of no practical importance. The assessment rolls are prepared and corrected without any reference to the purpose for which the tax is to be levied; and in apportioning the tax, the board of supervisors does not set down two or more sums to be paid by each person assessed, but only one sum in gross, without any reference to the application of the money when collected. The warrant annexed to the corrected assessment roll, directs the collector to what persons he shall pay over the money, and the several purposes to which it shall be applied. 1 *R. S.* 396, §37. It must, therefore, be apparent that in annulling the apportionment of taxes, or the warrants issued for their collection, no practical distinction can be made between those taxes which were designated for county and those which were intended for town purposes. The ground for setting aside the proceedings of the supervisors may be, that they allowed improper charges against the county; but the apportionment of the tax is entire, and must stand or fall altogether.

Nor do I perceive how the tax, or the warrants for its collection, can be annulled, so far as they affect the relator, without also declaring them void in relation to all the other taxable inhabitants of the county. The ground upon which the relator proceeds, is not such as affects his interest alone; but is, in principle, applicable alike to every person who is named in the tax list. The complaint is not that the relator has been required to pay more than his just proportion of the county burdens; but that, in consequence of the allowance of illegal charges, his tax, in common with that of every other person named in the assessment rolls, has been improperly increased. I have not met with any analogous case where the judgment or proceeding was quashed in relation to a particular individual affected by it, while it was left in force in relation to other persons in the same situation. In the case of the *Commonwealth* v. *The Blue Hill Turnpike,* 5 *Mass. R.* 420, the court of sessions had received and recorded the verdict of

a jury, assessing the damages of a party over whose land the road passed, and ordered the money to be paid by the *corporation* within six months; and in default of such payment, that the amount should be levied by warrant of distress against the personal property of the *proprietors of the turnpike.* The court on a certiorari removing the proceedings, held that the first part of the order of the sessions was proper, but that the last part, directing the money to be levied of the property of the individual corporators, was illegal; and the order was affirmed in part, and quashed as to the residue. *Parsons,* C. J. puts the judgment of the court upon the ground that " the part quashed was independent of, and unconnected with the part affirmed." He adds, that " in a civil cause, the order may consist of several distinct and independent parts, and each part may be considered as a separate order, complete in itself. Thus in a pauper cause, an order to remove three different persons may be considered as three orders, and if either order is illegal, it may be quashed, and the other orders affirmed." He concedes that on *certiorari*, the court can enter no new judgment, as they can on a *writ of error.* In the *The King* v. *Symonds*, 1 *East*, 189, the defendant was convicted of an offence by the magistrate, and ordered to pay several forfeitures, amounting to twelve pounds, together with the reasonable charges of recovering the same ; but the magistrate did not ascertain the amount of those reasonable charges, and for this cause, on the return of a certiorari, the whole proceeding was quashed. In *Rex* v. *Hall, Cowp.* 60, the defendant, who had been imprisoned on a like conviction, was discharged out of custody on *habeas corpus*, and the conviction was quashed. In the case before the court, the matter to be reviewed does not consist of several distinct or independent parts. It is not like an order in a pauper cause for the removal of three different persons, which may be legal as to one and illegal as to another. If the acts of the supervisors were unauthorized as to the relator, they were equally unwarrantable in relation to every other taxable inhabitant ; and I can perceive no ground upon which the proceeding can be sustained in part and quashed as to the residue.

NEW-YORK,    The question, then, involved in this proceeding is, whether
May, 1836.   the tax lists of the several towns in the county of Allegany,
The People   in which the relator was assessed, in the year 1832, and the
v.           warrants issued to the collectors, shall be quashed and annul-
Supervisors of
Allegany.    led for irregularity.   What would be the probable consequen-
ces of such a judgment as we are asked to pronounce? How
many hundreds of suits would it authorize against each of the
twenty-six supervisors, who are defendants, and what would
be the condition of the several officers who have collected the
tax? If the relator has a right to prosecute the writ *ex debito
justitiæ*, these inquiries should have no influence upon the dis-
position which is to be made of the cause; the court must
pronounce its judgment, and leave the consequences to others.
But if, in awarding writs of this description, the court is to ex-
ercise a sound legal discretion, and grant or refuse the process,
as the ends of justice and the public interest may require, we
are not at liberty to shut our eyes to the consequences which
may follow from entertaining this proceeding. It is not ne-
cessary to decide that actions could be maintained, either
against the supervisors or the collectors, in the event of a judg-
ment in favor of the relator. It is enough that such suits
would probably be brought, and it is not entirely clear, to say
the least, that they could not be maintained.

In the exercise of the superintending power of this court
over inferior jurisdictions, the *writ of error* is a writ of right,
and issues on conforming to such regulations as have been
prescribed by law. But the writ of *certiorari*, especially in
those cases where it is used for the purpose of reviewing the
acts and decisions of the special jurisdictions which are created
by statute, and do not proceed according to the course of the
common law, such as boards of supervisors, commissioners of
highways, and the like, does not issue *ex debito justitiæ*, but
only on application to the court, and special cause shown. The
reason is, that these bodies exercise powers in which the peo-
ple at large are concerned, and great public detriment or incon-
venience might result from interfering with their proceedings.
The writ cannot be allowed by a judge at chambers, but
only by the court itself. *Starr* v. *The Trustees of Ro-
chester*, 6 *Wendell*, 565.   *Comstock* v. *Porter*, 5 *id*. 98. *Al-*

*bany Water Works Co.* v. *The Mayor's Court,* 12 *id.* 292. In *The King* v. *Eaton,* 2 *T. R.* 89, on a motion for a writ to remove a conviction before a justice of the peace, *Buller,* J. said, that the rule requiring the defendant to lay a ground before the court for granting a certiorari, had obtained since the time of Charles the second, and he cited a case of that day, where it was held as clear law that a certiorari ought not to be granted in vacation, but in open court, and upon a ground shown. *Commonwealth* v. *Downing,* 6 *Mass. R.* 72. *The State* v. *Vanderveer,* 2 *Halsted,* 38.

In *Arthur* v. *Commissioners of Sewers,* 8 *Mod.* 331, it was remarked by one of the judges, that "a writ of certiorari was not a writ of right, for if it was it could never be denied to grant it; but it has often been denied by this court, who, upon consideration of the circumstances of the cases, may deny it, or grant it at discretion." And Bacon, (Abr. tit. *Certiorari* A.) says, although the writ ought of right to be issued at the instance of the king, for the purpose of removing an indictment, yet the court "has a discretionary power in granting or refusing it at the suit of the defendant." He cites cases in which the court has refused to grant the writ. In *Ludlow* v. *Ludlow,* 1 *Southard,* (*N.J.*) 387, *Kirkpatrick, Ch.J.* says, the very issuing of such a writ is the exercise of a high judicial power, and must, in its nature, be discretionary. In *Lees* v. *Childs,* 17 *Mass. R.* 351, it was held, that an application for a certiorari was addressed to the discretion of the court, and would not be granted but on showing probable cause for supposing that injustice had been done. In *Ex parte Weston and others,* 11 *Mass. R.* 417, the court held the same doctrine; and although that was a case which did not affect the public, but the rights of individuals only, the court said, that before granting a certiorari they would always look into the record, and even into the circumstances attending the process; "because, when the record is actually returned, in obedience to the writ of certiorari, they are bound to quash the whole proceeding, if error should appear."

In *Ex parte Adams,* 4 *Pick.* 25, the application for a certiorari was made by a person who had been fined by a justice of

NEW-YORK, the peace, for not performing military duty, and was denied.
May, 1836. The case involved the legality of an order of the commander
The People in chief, disbanding a militia company, to which several ob-
v jections were made. The court said, "admitting that these
Supervisors of
Allegany. objections could not be satisfactorily answered, and that the
proceedings, in disbanding the company, were not strictly
regular and legal, we should nevertheless be of opinion that a
certiorari ought not to be granted. The application is to the
discretion of the court, and we cannot imagine a stronger case
than the one presented, for the sound and salutary exercise of
our discretion in refusing the application, notwithstanding
some mistakes may have been made, since none of them are
important or injurious to the company." *The Inhabitants of
Freetown* v. *The County Commissioners of Bristol,* 9 Pick. 46,
which related to the laying out of a road, is another case
where the writ was refused ; although it was virtually admit-
ted that there were irregularities which would be sufficient
to quash the proceedings, should a certiorari be awarded. In
*The State* v. *Anderson,* 1 Coxe, *(N. J.)* 318, a certiorari had
been issued to the clerk of a county, to certify the election of
the defendant to the office of sheriff, for the purpose of setting
aside the election, because the defendant was not a freeholder,
as the law required. A return had been made, and it appear-
ed that the defendant was not qualified to hold the office.
The court said they had by law a discretionary power, in rela-
tion to the writ of certiorari ; and they refused to set aside the
election, and quashed the writ, " on the single ground of pub-
lic inconvenience." If, in the cases which have been men-
tioned, too much importance was not attached to the consid-
eration that the public interests would be prejudiced by award-
ing the writ, it can hardly be denied that it would be a salu-
tary exercise of the discretion of the court to refuse to inter-
fere in that form in a case like the one under consideration.
In *Rex* v. *The Inhabitants, &c.* 1 *Lord Raym.* 580, it was
remarked, "As to the cases of orders made by commissioners
of sewers, and of the fens, the court is cautious in granting
certioraris ; and first, they make inquiry into the nature of the
fact, and what will be the consequence of granting the writ;

because the country may be drowned in the mean time, whilst commissioners are suspended by the certiorari." This court has reviewed on certiorari an assessment for opening a sewer in Canal street, in the city of New-York, *Le Roy* v. *The Mayor, &c.* 20 *Johns. R.* 430 ; and an assessment for regulating and paving a street, in the village of Brooklyn, *Bouton* v. *The President, &c. of Brooklyn,* 2 *Wendell,* 395. The writ may also be awarded for the purpose of removing a village tax, *Caledonian Comp.* v. *Trustees of Hoosick Falls,* 7 *Wendell,* 508,665, and for the purpose of reviewing a school district tax. *Storm* v. *Odell,* 2 *Wendell,* 287. Under what particular circumstances the writ was awarded in these cases does not appear ; that was not the point before the court, in the decisions as reported. The *power* of the court to allow the writ, in such cases, cannot be doubted ; and it is to be presumed that its *discretion* was exercised upon proper and sufficient grounds. But if the court would award the writ in all cases like these which have been mentioned, merely on showing error in the proceedings of the inferior tribunal, it does not follow that it will in this form review the acts of the boards of supervisors in levying the general town and county taxes ; especially in a case where no complaint is made against the principle on which the tax was apportioned : but only that the supervisors erred in auditing some of the county charges, and consequently added a trifle to the burden of the inhabitants. So far as the public interest and inconvenience may be taken into the account in guiding the discretion of the court, the question now presented is vastly more important than it can be in the case of an assessment for a sewer, or for paving a street, or the levying a village or school district tax.

That the court will not interfere in a case like the present, has, I think, for a long time been regarded as the settled law. In *Rex* v. *The Inhabitants of Utoxeter,* 2 *Strange,* 932, adjudged in 1732, the reporter states that, " Upon great debate and search of precedents, is was held that a certiorari would not lie to remove the poor's rate itself, the remedy being to appeal, or by action where a distress is taken, which will an-

VOL. XV.          27

NEW-YORK,
May, 1836.

The People
v.
Supervisors of
Allegany.

swer all the ends of justice in coming to an unequal rate;
whereas, if the rate itself should be required to be sent up,
great inconveniences and delays would follow." The court
having mentioned, as one ground of its decision, that the par-
ty had an appeal, an attempt was made two years afterwards
to obtain a certiorari in a case where on appeal the rate had
been quashed, and a new rate had been made by the *sessions*.
This new rate the party sought to remove from the sessions,
and urged that here he could have no appeal; but the court,
in reference to what had been said in the former case, said,
" that was not the only reason they went upon, and denied
the certiorari." In *The King* v. *King and others*, 2 *T. R.* 234,
a certiorari had been obtained to remove the assessments of
the land tax in the tower division of the city of London, for
the purpose of founding an application for an information
against the commissioners. The court, on motion, quashed
the writ, saying that " very great public inconvenience would
ensue from permitting it to issue," and it was added, that
" for that reason the court had refused the writ in the case of
a poor rate, for the poor would remain unprovided for in the
mean time, if it were otherwise. So here, at least as many
inconveniences, or perhaps more, may be foreseen, from es-
tablishing a precedent for removing the assessments of the
land tax by certiorari." This case was decided in 1788, and
from that time to the present it seems to have been regarded
as a settled question in England, that a certiorari will not be
awarded to remove a poor rate, or an assessment of the land
tax. If there had been any case or dictum to the contrary, it
would not have escaped the researches of the counsel who
argued this cause on behalf of the relator.

In this state also the question has been regarded in the
same light for more than thirty years. Although it is now
directly presented for the first time, *Spencer*, J. in delivering
the opinion of the court in the case of *Lawton* v. *The Commis-
sioners of Highways of Cambridge*, 2 *Caines*, 182, which was a
case upon certiorari, said " Though the general power of the
court is indisputable, there are cases where they will not in-
terfere. In the case of a poor rate, they will refuse the writ;

as also in the assessment of the land tax, from a regard to the public inconvenience."

Whether the relator has in truth sustained an injury, I do not think it necessary to inquire ; nor do I feel called upon to point out a remedy. If the law has provided no adequate means of redress, the question addresses itself to the legislature, where a remedy for such cases may be provided, which, in its exercise, will not involve the evil consequences of proceeding by certiorari. It is enough for the decision of the case presented, that the court does not consider itself at liberty to sanction this proceeding.

There is another view of this case equally fatal to the application of the relator. He seeks to quash the apportionment of the tax, and the warrants issued for its collection ; and yet none of those papers are before the court. The supervisors say they have not got them, and consequently cannot answer that requisition of the writ. It does not even appear that any tax has been imposed on the relator. It cannot for one moment be maintained that the court can quash proceedings not brought up by the writ; and the case might have been disposed of upon this ground alone, if it had not been deemed proper to pass upon the main question which was so elaborately discussed on the argument.

The proper disposition to make of this cause is to quash the certiorari. Precedents for such a course will be found in some of the cases already cited ; and in *Rex v. Wakefield*, 1 *Burr*. 485, the writ was superseded, the return taken off the file, and the order of the justices, which had been removed, was remanded. In this case, as the tax lists and collectors' warrants have not been removed, an order quashing the certiorari will give full effect to the opinion entertained by the court.

Certiorari quashed.