## MATTER OF EIGHTIETH STREET.

*Supreme Court, First District ; General Term, March, 1864.*

CERTIORARI.*—ASSESSMENT.—FRAUD AND LEGAL IRREGULARITY.

The allowance or refusal of a writ of certiorari to review the proceedings of local
public authorities in laying assessments and awarding damages, rests in the
sound discretion of the court.

In such cases, the writ should be refused, to avoid public inconvenience, where
the relator has other adequate remedy by legal proceedings.†

---

* In THE·PEOPLE *on rel.* COOK *a.* THE BOARD OF POLICE (*Supreme Court, First District ; General Term, February,* 1864), it was *Held,* that under the Laws of 1840, 1844, and 1854, costs are now properly allowed on a common-law certiorari.

Motion to resettle order allowing costs on certiorari.

This was a certiorari, issued on the relation of Stephen L. Cook, directed to the Board of Police of the Metropolitan Police District, to review the conviction of the relator of charges of misconduct as a policeman.   Judgment was rendered in favor of the relator, with costs.   The decision is reported 16 *Ante,* 473.   The respondents moved to resettle the judgment in respect to the award of costs.

*Aaron J. Vanderpoel,* for the motion, cited Baldwin *a.* Wheaton, 12 *Wend.,* 262 ; People *on rel.* Harvey *a.* Heath, 20 *How. Pr.,* 304 ; Caldwell's Case, 13 *Abbotts' Pr* , 405 ; S. C., *sub nom.* People *a.* Kelly, 35 *Barb.,* 444.

*William Henry Arnoux,* opposed, cited Laws of 1840, 327, ch. 386 ; Laws of 1844, 402, ch. 273 ; Laws of 1854, 592, ch. 270.

BY THE COURT.—BARNARD, J.—At common-law, costs were not allowed upon a certiorari.  (People *a.* Duell, 6 *Abbotts' Pr.,* 285 ; S. C., 16 *How. Pr.,* 43 ; People *a.* Heath, 20 *Ib.,* 304 ; People *a.* Kelly, 35 *Barb.,* 444 ; S. C., *sub nom.* Caldwell's Case, 13 *Abbotts' Pr.,* 405).  In 20 How. Pr., the court say, "None is given by any statute to which our attention has been called, in a case like the present. The statutes referred to were the laws of 1854, cited above, and the Code, section 318.   It is the duty of counsel to inform the court of the law, and in that case the counsel was properly punished for his lack of diligence in a matter of such personal interest as the law relating to costs.   In the case under consideration, the laws of 1840 and 1844 have been brought to our notice, and they clearly and distinctly allow costs on every certiorari.  The decision in Wendell (Baldwin *a.* Wheaton, 12 *Wend.,* 262) is inapplicable, because made prior to the passage of those acts.  The other decisions must be disregarded, because it appears that the attention of the court had not been directed to the statutes cited above.  (*Ram on Legal Judgments,* 121.)

Motion denied.

† This rule is further illustrated in THE MATTER OF TOMPKINS SQUARE (*Supreme Court, Second District ; Special Term, August,* 1858), where it was *Held,*—1. That a

The act empowering a justice of the Supreme Court, on petition, to set aside as-
sessments in New York for fraud or legal irregularities in the proceedings rela-
tive thereto (*Laws of* 1858, 574, ch. 338), is a remedial statute, and should be
liberally construed.

certiorari to review an ordinance directing a local improvement, must be applied
for immediately: it should be refused, if the applicants have suffered such delay
that the assessment has been made and partly collected and paid over. It was
further *Held,*—2. That a remonstrance against proceedings in assessments for a
local improvement will not be regarded, if signatures necessary to make out the
majority are not made by the parties whose names are used and are not duly au-
thenticated. 3. The common council of a municipal corporation may act upon
the petition and the remonstrance in a street case, presented to their predecessors
in the preceding year.

In this case, application was made to the court for a certiorari to remove the
proceedings of the Common Council in the matter of opening Tompkins Square,
in Brooklyn, to the Supreme Court for review; the relators claiming that the
proceedings were invalid, on the ground, among others, that a majority of those
interested remonstrated against the improvement. Upon the application, the
court referred it to L. Birdseye, Esq., to take proof of the question of fact, as to
whether a majority did remonstrate against the proposed opening. The referee
proceeded to take testimony, and after a hearing, reported that at the time men-
tioned in the notice of the Common Council for the filing of remonstrances, there
were 511 owners within the district of assessment, and that of those, 290 had re-
monstrated against the measure. Other facts appear in the opinion.

On the coming in of the report, the application was denied, the following rea-
sons being assigned by the court—STRONG, J., for the decision:

1. The Common Council could return only the evidence laid before that body
and its committees. There was not sufficient evidence that the remonstrance had
been actually signed by a majority of the landowners in the district. There were
suspicious circumstances in reference to several of the signatures, which author-
ized a requisition for further proof. If the direct decision of the Common Coun-
cil upon this question of fact could be reviewed upon a common-law certiorari
(which is at least doubtful), there is not enough in the papers to authorize this
court to reverse it. If the report of the referee can be taken into consideration
upon this question, it appears from that, that but 254 out of 511 names were signed
by the parties themselves, or by any of them through an agent under written au-
thority, or by others in their presence. The signatures of guardians for their
wards were unauthorized by the statute, as were also those by agents, especially
when, as in this case, their authority was not proved before the Common Council
or its committee. The remonstrance held the affirmative upon this question, and
any defects in their proofs should be visited upon them.

2. It was competent for the Common Council of 1856 to act upon a petition and
remonstrance presented to their predecessors in 1855. The case of Coles *v.* Trus-
tees of Williamsburgh (10 *Wend.*, 659) is directly in point, and so decides that
question. In Wetmore *a.* Story (22 *Barb.*, 414; S. C., 3 *Abbotts' Pr.*, 262), it was
decided that the resolution in question had not been adopted by the two Boards
of the same Common Council, and was therefore invalid. It differed from the
Williamsburgh case, which was acknowledged to be law.

3. The application for a certiorari in this case is at too late a day. The ordi-

Thus, *it seems* that it entitles a property-owner to relief, where the street commis-
sioner, by fraudulently over-estimating the quantity of rock excavation in grad-
ing a street, has awarded the contract for the work to a person apparently, but
not truly, the lowest bidder.

nance or resolution of the Common Council, directing the improvement, was
adopted in June, 1856. It was competent for those opposed to the measure to ap-
ply for a certiorari immediately thereafter. But instead of pursuing that course,
they suffered the Common Council to proceed and make the necessary assessments,
and out of $64,981.60, $29,046.62 has been collected and paid out for expenses
and awards. It would be productive of great inconvenience and expense to arrest
the proceedings at this late day. It will be far better that the parties should seek
another remedy, which (if they have been wronged) would do justice to them
without unnecessary injury to the public. (People *a.* Mayor, &c., of New York,
5 *Barb.*, 43.)

In HUSTED's CASE (*Supreme Court, First District; General Term, November*, 1863), it
was *Held*, that a certiorari does not lie to review proceedings in a habeas corpus
case, until after a final determination of the case : it does not lie upon an order
committing defendant for a false return.

In this case, Amelia A. Husted had procured a habeas corpus to regain from Pe-
ter O. Husted the custody of her child.

The defendant made return to the writ of habeas corpus, that the child men-
tioned in the writ was not in his custody at the time of the issuing of the writ, or
at the time of its service, or at any time during that period, and that, therefore,
he could not produce her body.

The relator traversed the return, and on a trial of the issue, it was found false,
and the court (CLERKE, J.) ordered the defendant to be committed and to pay a
fine for the contempt.

*J. R. Whiting,* for the defendant, then applied to the court at general term, for
a certiorari to review this determination, which now came on for hearing. (Pres-
ent, SUTHERLAND, P. J., LEONARD and BARNARD, JJ.)

*Gilbert Dean,* opposed, raised the preliminary objection that the order in ques-
tion was interlocutory and not final, and therefore not now reviewable.

After hearing counsel, the court reserved their decision, and on a following day
announced it to be, that, by the statute (3 *Rev. Stat.*, p. 892, § 85), no certiorari
shall be issued in habeas corpus cases until a final determination shall have been
made by the officer. That the proceeding, as brought before the court, is not
reviewable on certiorari until a final adjudication as to the custody of the infant.

The writ of certiorari was therefore quashed.

In FREEMAN *a.* OGDEN (*Supreme Court, First District; General Term, February*, 1864),
it was *Held*, that summary proceedings to recover the possession of lands were
reviewable by certiorari, and not by appeal.

This was a certiorari to C. W. Van Voorhies, Esq., Justice of the 7th District
Court, New York city, to obtain the review of certain proceedings instituted by
Jonathan M. Freeman against James W. Ogden, to recover possession of lands, &c.

Certiorari to review proceedings relative to an assessment.

The writ was directed to the Mayor, Aldermen, and Commonalty of the city of New York; the proceedings sought to be reviewed were in relation to an assessment for regulating and grading Eightieth-street, between the Fifth-avenue and the East river, New York city. The street commissioner advertised for proposals for the work, estimating it at 20,000 yards of rock excavation, and 8,000 yards of earth excavation, and calling on the bidder to fix his price per cubic yard. The successful bidder proposed to do the rock excavation for nothing, and the earth excavation at one dollar per cubic yard. The true quantities were, rock 8,886 yards; earth, 33,663 yards. If the work had been awarded to other bidders, it would have cost $11,000. Certain of the property-owners took the present proceeding to set aside the assessment. The court below (Mr. Justice INGRAHAM), after delivering the opinion reported 16 *ante*, 169, made the following order: "The said justice being of the opinion that the petitioners are entitled to the relief for which they apply, and that the proceeding by certiorari is a suitable and appropriate proceeding in and by which to obtain such relief, but that in view of the rule of the court, if in this proceeding such relief is granted, it should be by the decision of the general term :

"Ordered, that the said motion as made at the special term be, and the same is hereby denied, but that the same be transferred to the next general term, and that the said petitioners have leave to bring on the said motion at the general term on the said writ, and the said return thereto, on the papers as submitted at the special term."

---

*Stephen P. Nash*, for the respondent, claimed that the New York Common Pleas had exclusive jurisdiction of the review of summary proceedings for the possession of land under sections 34, 351, of the Code, and ch. 193 of Laws of 1849, and that the remedy was by appeal.

*George C. Goddard*, for the relator, was stopped by the court.

The Court, (LEONARD, P. J., CLERKE and SUTHERLAND, JJ.) *Held*, that these proceedings were reviewable by certiorari, and not by appeal, and the review was properly to be had in the Supreme Court.

After argument, the proceedings before the justice were reversed and restitution ordered.

*John E. Parsons,* for the relators.—I. The contract was in fraud of their rights. Property-holders are mere passive victims of corporation frauds. The most they can do, though not so required, is to give notice of the fraud : in this case, the city was apprised of it in 1857. The fraud, therefore, vitiates the assessment.

II. The contract, and all proceedings based upon it, were also void, under the charter of 1853, as having been given to the highest instead of the lowest bidder. (Brady *a.* Mayor, &c., of N. Y., 2 *Bosw.*, 173 ; Aff'd, 20 *N. Y.*, 312.) All the bids were in the prescribed form, with adequate security, corresponding in every respect to the requirements of the ordinance.

III. To save the expense to themselves and the city of numerous suits or proceedings, in which the city would be unsuccessful, parties representing the larger part of the assessment unite in one proceeding, applying for a certiorari.

IV. Certiorari is the appropriate proceeding. 1. No relief can be granted under the act of 1858. (*Laws of* 1858, 574, ch. 338; Miller's case, 12 *Abbotts' Pr.*, 121 ; Horn's case, *Ib.*, 124.) 2. Nor under the act of 1841. (*Laws of* 1841, 143, ch. 171.) The assessors have no power to consider the validity of an assessment. Their only jurisdiction is to make a just and equitable assessment of the aggregate amount assessed, " among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire." (*Davies' Laws*, 526 ; Leroy *a.* Mayor, &c., of New York, 20 *Johns.*, 430.) 3. Nor by action : the courts have uniformly refused relief by action, where the record shows the invalidity, on the very ground that the proper remedy was by certiorari. (Heywood *a.* City of Buffalo, 14 *N. Y.* (4 *Kern.*), 534; Betts *a.* City of Williamsburgh, 15 *Barb.*, 255 ; Bouton *a.* City of Brooklyn, 15 *Barb.*, 375 ; S. C., 7 *How. Pr.*, 198 ; Van Doren *a.* Mayor, &c., of N. Y., 9 *Paige*, 388 ; Mayor, &c., of Brooklyn *a.* Merserole, 26 *Wend.*, 132 ; Mace *a.* Trustees of Newburgh, 15 *How. Pr.*, 161.)

V. The confirmation of the assessment was a judicial act, in this case exercised without jurisdiction on the part of the city or its board of assessors. The corporation has no power to impose upon property-owners a charge which could not be legally

Matter of Eightieth-street.

enforced by the party in whose favor it is imposed. The complainants being numerous, the court will not compel them to individual actions for the recovery of amounts illegally exacted, but having by a single proceeding the matter and all the parties before it, will prevent by its action a multiplicity of suits. (Bouton *a.* City of Brooklyn, 7 *How. Pr.*, 198; S. C., 15 *Barb.*, 375; People *a.* Mayor, &c., of Brooklyn, 9 *Barb.*, 535; Betts *a.* City of Williamsburgh, 15 *Ib.*, 255; Leroy *a.* Mayor, &c., of N. Y., 20 *Johns.*, 430; Starr *a.* Trustees of Rochester, 6 *Wend.*, 565; Wilson *a.* Mayor, &c., of N. Y., 1 *Abbotts' Pr.*, 415.)

VI. An assessment is a proceeding on the part of the corporation, the board of assessors being one of its bureaux. The writ is therefore properly directed to the Mayor, &c. And the record consists not merely of what the assessors may see fit to incorporate in the roll, but of all the proceedings essential to show a valid assessment,—the ordinance, estimate, proposals, bids, award, confirmation, contract, certificate of work done, action of the assessors, &c., &c., and all action of the common council in respect to the proceeding. The record thus made up, in this case, proves the illegality of the assessment. 1. By reason of Slattery not having been the lowest bidder. 2. By reason of his fraudulent complicity with the street commissioner. The circumstances are inconsistent with honest intent, and lead irresistibly to the inference of fraud.

*John E. Develin*, for the respondent.—I. The writ should be quashed, out of regard to public inconvenience. Rex *a.* Utoxeter, 2 *Strange*, 932; Rex *a.* Justices of Shrewsbury, *Ib.*, 975; Rex *a.* King, 2 *Term.*, 234; Lawton *a.* Commissioners of Cambridge, 2 *Cai.*, 182; People *a.* Supervisors of Alleghany, 15 *Wend.*, 198; Elmendorf *a.* Mayor, &c., of N. Y., 25 *Wend.*, 693; People *a.* Supervisors of Queens, 1 *Hill*, 195; People *a.* Mayor, &c., of N. Y., 2 *Ib.*, 9; Matter of Mt. Morris Square, 2 *Ib.*, 15; Case of Fifty-first-street, 3 *Abbotts' Pr.*, 232; People *a.* City of Rochester, 21 *Barb.*, 656, 664; People *a.* Stilwell, 19 *N. Y.*, 531; Dixon *a.* City of Cincinnati, 14 *Ohio*, 240.)

II. The relators have a remedy in the nature of an appeal; and where a remedy of that character exists, a certiorari will not be granted. (*Laws of* 1841, 143, ch. 171; *Laws of* 1858,

574, ch. 338; *Davies' Laws*, 537, § 182; Matter of Mt. Morris Square, 2 *Hill*, 14, 27; People *a*. Covert, 1 *Ib.*, 674; Storm *a*. Odell, 2 *Wend.*, 287.)

III. The writ is misdirected, and should be quashed for that reason. (*Laws of* 1861, 702, ch. 308, § 1; Bogert *a*. Mayor, &c., of N. Y., 7 *Cow.*, 158.) It was by the board of revision and correction, constituted by the act of 1861, that this assessment was confirmed, and it is to that board that the writ should .have been directed. (Bogert *a*. Mayor, &c., of N. Y., 7 *Cow.*, 158.)

IV. The writ removes nothing but the record of the proceedings of the tribunal whose acts are sought to be reviewed, and the only question subject to review is, whether that tribunal has kept within the limits of its jurisdiction. (Birdsall *a*. Phillips, 17 *Wend.*, 464; Allyn *a*. Commissioners of Schodack, 19 *Ib.*, 342; *ex-parte* Mayor of Albany, 23 *Ib.*, 277; Stone *a*. Mayor, &c., of N. Y., 25 *Ib.*, 157, 167; Nichols *a*. Williams, 8 *Cow.*, 13; People *a*. Mayor, &c., of N. Y., 2 *Hill*, 9; People *a*. Overseers of Barton, 6 *How. Pr.*, 25; Haviland *a*. White, 7 *Ib.*, 154; People *a*. City of Rochester, 21 *Barb.*, 656, 665; People *a*. Goodwin, 5 *N. Y.* (1 *Seld.*), 568.) The only matter in the nature of a record contained in the return, is the ordinance authorizing the work, the estimate and assessment made by the persons authorized for that purpose, and the confirmation of the assessment by the board of revision. (People *a*. Mayor, &c., of N. Y., 2 *Hill*, 9.)

V. The objections urged against the assessment are not available to the relators, since they do not affect the jurisdiction of the assessors, or the jurisdiction of the board by whom the assessment was confirmed. (Harman-street, Matter of, 16 *Johns.*, 231; John and Cherry-streets, Matter of, 19 *Wend.*, 659, 671; William and Anthony streets, Matter of, *Ib.*, 678, 695.) The relators having failed to present their objections to the assessors, are estopped from questioning its regularity upon any except jurisdictional grounds. (Miller's Case, 12 *Abbotts' Pr.*, 121; Horn's Case, *Ib.*, 124; Bennett's Case, *Ib.*, 127; Keyser, Matter of, 10 *Ib.*, 481.) The contract forms no part of the assessment proceeding. (Hays' Case, 14 *Abbotts' Pr.*, 53.)

CLERKE, J.—I presume that nothing is better settled in this State, than that, in cases like the present, the allowance or re-

fusal of a writ of certiorari rests in the sound discretion of the court. The local public authorities, who are invested with the power of laying assessments and awarding damages, exercise powers in which the people at large are concerned; and as BRONSON, J., observes, in People a. Supervisors of Alleghany (15 *Wend.*, 198, 206), " Great public inconvenience might result from interfering with their proceedings." Besides, it appears to me that the parties alleged to have been injured in this case had a complete remedy under the act of 1858. This is a remedial statute, and should be liberally construed. It affords a summary remedy to all who have been affected by any fraud or legal irregularity in proceedings relative to any assessments for local improvements in the city of New York. The petition discloses a palpable fraud, concocted and carried out by the contractor and the street commissioner; in short, a positive conspiracy to defraud the petititioners. This is not at all like Miller's case (12 *Abbotts' Pr.*, 121), to which the counsel for the petitioners refers us. The ground of the application in that case was, that a part of the work included in the assessment was constructed without any contract, though it exceeded five hundred dollars. The judge considered that this was an irregularity which did not affect the jurisdiction of the tribunal by which the assessment was imposed, and unless such an objection were raised before confirmation the irregularity was cured. But in this case, as I have said, gross and palpable fraud is alleged, and, if true, the petitioners were clearly entitled to the relief afforded by the act of 1858. There are other objections to this application not necessary now to notice.

The writ should be quashed.

LEONARD, J.—It is not satisfactory to examine alleged frauds in fact upon certiorari, where the frauds are to be found by induction, and not by evidence taken on the question—the allowance of the writ being discretionary. I concur in quashing it, without expressing any opinion as to the other remedies.

SUTHERLAND, J.—I concur in Judge CLERKE's conclusion.