In the matter of the application of D. D. CONOVER vs.
CHARLES DEVLIN.

A common law certiorari stays the proceedings of the court to which it is ad-
dressed.
In proceedings under 1 R. S. 125, § 56, by a party succeeding to an office, to
get possession of books and papers appertaining to it, the issuing of the war-
rants, after the magistrate has decided that the applicant is entitled to them,
is a ministerial and not a judicial act.
A common law certiorari, served after the decision and before issuing the war-
rants, suspends the powers of the magistrate at that point.
It may not suspend them in the midst of a trial, but at the end of it its operation
is to suspend them at once.
If served at any time before execution, or process in the nature of execution, is
issued, it stays the issuing.
An order by the court allowing the writ, directing that it shall not be deemed
to operate as a stay, does not alter or modify the operation of it in that re-
spect; especially if made after the writ is allowed and served.
Whether a conditional or partial allowance, that the writ shall not stay proceed-
ings, can be made in any case ? *Quære ?* It *seems* not.
Where application for the writ was accompanied with an application for a stay
of proceedings, which was refused; *Held*, that the intention of the court, as
shown by refusing the stay, did not change the effect of the writ.

APPLICATION for warrants to commit Charles Devlin to
jail until he should deliver up the books and papers per-
taining to the office of street commissioner of the city of New
York, and directing the sheriff to search for said books and
papers and seize them, in order that the same might be de-
livered to the applicant, D. D. Conover.

*D. D. Field, W. C. Noyes* and *D. Field*, for the applicant.

*J. T. Brady, R. Busteed* and *D. E. Sickles*, opposed.

PEABODY, J.  Proceedings having been instituted before me,
under 1 R. S. 125, § 56, to compel Mr. Devlin to deliver to Mr.
Conover the books and papers pertaining to the office of street
commissioner of the city of New York, on the ground that the
applicant was the successor of the late incumbent, to the office
to which they appertain, and the parties having been heard from

In the matter of Conover *v.* Devlin.

day to day until the 8th of July, 1857, and my decision having been announced on that day, that the applicant was such successor, and as such was entitled to the relief asked, that is, to the warrants provided for in that section, one that the respondent be committed to the jail of the county until he should deliver them, and the other that the sheriff search for said property and seize it, that it might be delivered to the applicant, as therein provided, an order to that effect was accordingly made, reduced to writing and signed by me, on the 10th day of said July. That order was immediately served on the respondent, and delivery of the papers, in compliance with it, demanded, which was refused. This refusal was followed by an immediate application for the warrants contemplated by the act, to which, by my decision embodied in the order I had determined, he was entitled. Pending this application, and while a discussion respecting the effect of an injunction then in force, restraining the applicant from taking into his possession the books and papers was in progress, a writ of *certiorari* from the supreme court was served on me, commanding me to certify to that court my proceedings in the premises. The injunction has since been dissolved, and I am now asked to issue the warrants, notwithstanding the *certiorari*.

The fact that this writ, from its operation, suspends the power of the officer to whom it is addressed, is not denied by the applicant, but, on the contrary, it is admitted as a general proposition ; but that such is not the effect in this particular case, is insisted on several grounds, some of which seem to arrange themselves under the following heads, and which I will proceed to consider :

1. It is said that this proceeding, in its nature being summary, and intended to confer present possession merely, not to determine the ultimate rights of the parties, is not subject to the operation of this writ. And there is much of good sense in the suggestion that such a proceeding should not be liable to be suspended in this manner. It does not determine the ultimate rights of the parties, but leaves them to be determined in a more grave and formal proceeding. They depend on the

right to the office, for ascertaining which, ample provision was made before.   The ancient prerogative writ of *quo warranto* gave contesting claimants a mode of determining controversies respecting office, conclusive in its nature on all the parties interested.   In that writ, in its day, as since in the action of the same name, the sovereign was the nominal and real plaintiff, while the person asserting his rights to the office, if there were such a claimant, was made a party incidentally, under the title of relator, and in fact was and is practically plaintiff, so far as the assertion and protection of his own rights is concerned; and the defendant, who was called on by the proceeding to show by what authority he held the office, if unable to show sufficient warrant in law, and found not entitled to it, was, in obedience to the rights of the plaintiff, (and the *quasi* plaintiff, if he was deemed entitled,) ousted.   The state was thus freed from the evil of an unlawful exercise of its franchise by an intruder, and a vacancy was made, into which the *quasi* plaintiff or relator was inducted, if his title was approved ; and if not, the office remained vacant and ready for the occupation of the person who should be duly selected and qualified to fill it. The right to the office being thus determined, the right to the books and papers appertaining to it followed it as a necessary and inevitable consequence, and thus in a grave and dignified manner the rights of the parties were ascertained and declared, and subsequently, by adequate process, enforced.

This proceeding, however, was not thought sufficiently speedy to answer all purposes, and accordingly, to supply immediate and urgent necessities, the statute under which I am acting is made applicable, by which, in a brief and summary manner, on a decision of the question of succession, in fact, merely, may the incumbent be put into possession of the books and papers for the time being.   Thus, until the title can be ultimately ascertained, by the only conclusive adjudication, the person apparently in the possession and use of the franchise, with color of title, may be placed in possession of the books and papers incident to its use.

In the matter of Conover *v.* Devlin.

In a case like the present, where the title to the office is in doubt, effect cannot otherwise be given to this statute without actually deciding the question of title, which I am confident, and all seem to agree, cannot have been the intent of the legislature. To transfer to a person not actually the incumbent of an office at the time, the books and papers incident to it, which are often indispensable to its user, would not only be to adjudge his title in the abstract, but, moreover, for practical purposes, to induct the claimant—to invest him with the office; and thus it would perform the functions of a *quo warranto*, and more. It would be to decide the question of title, incidentally to the question of right to present possession of the books and papers.

Properly applied in this case, this statute enables a person in and occupying an office to get possession of the books and papers incident to it, as the means of performing the duties of the place until the one actually entitled should be judicially ascertained. There would, therefore, seem to be propriety in limiting the decision of this question, in most cases, to the magistrate before whom it should originate, and be heard in the first instance; or at least allowing the matter before him to proceed to its conclusion, before a review should be allowed; and that was, doubtless, the intention of the legislature, in cases ordinarily arising, that a vacuum, said to be abhorrent in nature, should not occur in the administration of the duties of government. The question of temporary possession of books, &c. necessary to the performance of the duties of an office, until the title can be determined, would seem to be a very suitable one to be determined very speedily, and so this act seems to contemplate that it shall be, and such is the course in practice. But that no error, however palpable, no injustice, however gross, should be corrected by a revisory tribunal in any case, does not seem necessary, nor is there any evidence to show it to have been the intent of the legislature. All the usual means of procrastination are excluded. The time for appearing, after service of process, the delays incident to formal pleadings, to formal trials in term time, indeed all formalities, are dis-

pensed with for the sake of speed in arriving at the result. But one single mode of reviewing and correcting errors is left, and that by aid of the common law writ of *certiorari*—the venerable, hoary writ, as it was styled on the argument. This writ even is not a matter of strict right, but is always in the discretion of the court, and is only to be allowed in cases of a public nature, where the court sees that there is probably error, and that to review in this manner will, on the whole, be likely to conduce to substantial justice between the parties; and further, that it will do no harm to the public. This is the rule; and where it appears that injustice has probably been done, and that the error can be corrected on *certiorari*, without hardship to the party against whom the writ is asked, or detriment to the public, it should be granted, and in these cases only should it be granted, say the authorities, in effect. Our reports abound in cases where, after solemn argument and grave deliberation, the writ has been refused, and others, in which, after having been granted, it has been quashed by the ablest judges, on the ground that general justice and the public interest did not call for it, or perhaps seemed opposed to it. Such is the case of *The People ex rel. Church* v. *Supervisors of Allegany County*, (15 *Wend.* 198,) and numerous other cases are there cited, to the same end. Throughout the opinion in that case, the learned judge (Bronson) treats it as a writ only to be allowed on special cause shown, and when, in the discretion of the court, it appears that substantial justice between the parties requires, and the public interest at least permits, it. That was a motion to quash a writ already granted, and the court allowed the motion entirely on the ground that, on the whole, it ought not to have been granted, the public interest seeming inconsistent with it, whether the relator had sustained an injury or not. He expressly excludes all inquiry into that, and virtually, for the purpose of the argument, assumes that he might have, and that there might be, no other remedy for him. He says: "Whether the relator has in truth sustained an injury, I do not think it necessary to inquire, nor do I feel called upon to point out a remedy." Of this writ, he says, it does not issue

In the matter of Conover *v.* Devlin.

*ex debito justitiæ,* "but only on application to the court, and on special cause shown."

From what I have said, it appears, I think, that this remedy by *certiorari* is pretty well hedged about with safeguards. First, that it should appear probable that wrong has been done; and second, that the error is of a nature which can be corrected on certiorari; and third, that the writ will not operate oppressively, and that all these should be determined by the court before the writ should be allowed, and, indeed, *that it should be quashed after it is allowed, if it do not appear that all the requisites occur* in the case. (15 *Wend.* 198.) This seems to me to answer the argument, *ab inconvenienti,* that the writ should not apply to proceedings like this, because of the danger that it would defeat the end designed by the proceeding itself. If the judgment sought to be reviewed, after careful examination, seems to be wrong, and it also seems, *after like careful examination,* that no harm can be done by allowing the writ to take its course, (questions with the decision of which I have nothing to do, but both of which the court granting it is bound to decide in favor of the applicant before it allows it,) the application of the writ would seem not only not inconsistent with this remedy, but there would seem to be no good ground to object to the practice on principle or in policy. The case of *Lynde* v. *Noble,* (20 *John.* 80,) only decides that a *certiorari* issued before trial, to a justice, in proceedings under the "act to amend the act concerning distresses for rent and for other purposes," passed April 17, 1820, should be quashed, as being improvidently issued at this stage of the case. It is far from deciding that while the *certiorari* was allowed to stand, the officer to whom it was issued might disregard it. In that case it was prematurely issued, being before the trial, the court seem to say and the officer did disregard it, so far as to finish the trial to be sure; but no action was taken to determine the effect of his acts, either as to himself or third persons, and, therefore, nothing is decided on that subject, and even *he* refused what I am asked to do—to issue his warrant—until the *certiorari* was quashed. So that that case does not establish the

propriety of the course pursued by the magistrate there even, and if it did, it would be no authority for the act I am asked to perform; and, indeed, it seems to be assumed throughout the opinion, that the writ did operate to suspend the powers of the officer after he had made his decision, and thereby terminated his judicial functions, leaving to be done only the ministerial act of issuing his warrant, which is exactly the condition of this case.

It is said that the order made by the court the day after the *certiorari* was issued and served, to the effect that said writ should not be deemed to operate as a stay of proceedings, or to interfere in any manner with the proceedings before me, prevents it having any such effect. But if the *certiorari* the day before, suspended my powers and functions, it is not easy to see how an order of this kind could restore them—the writ being still in existence. The writ itself, of its own force, (*ex proprio vigore,*) when allowed and served, terminated my powers, if it had any application to disturb the proceeding at all; and while it remained unrevoked and in force as a writ, I doubt very much if its legitimate effect could be thus modified by an order of the court itself. My powers are suspended, if at all, by a transfer of the proceedings from me to the supreme court, and a necessary consequence of this would seem to be that I am not in possession of the case, and can take no steps in it. The allowance of the writ was unconditional; and this order, if it have any effect, must have the effect to modify or revoke some part of it, or render it conditional, while by its terms it would seem not so much designed to revoke or qualify the allowance as to explain it, and declare or order (to quote its language) "that the writ shall not be deemed or taken to have a certain effect supposed to follow as a legal consequence from it." What the effects of a *certiorari* are, is a question of law, not usually to be determined by declarations, even of the court allowing it. It was urged on the argument and not denied, and perhaps I am at liberty to assume, that the court, when it allowed the writ, refused to allow a stay of proceedings in addition to it. That would not alter the effect of the writ in that respect, and

it seems it necessarily operated, of itself, as a stay. The mere saying that a writ of *certiorari* or *habeas corpus*, or other process, shall not perform the functions assigned to it by law, or that one of these writs shall have the effect of the other in a particular case, cannot make such a writ operate as it is declared to, differently from its legal province. The chief, and perhaps the only direct effect of this writ, is to remove the proceeding before the officer to whom it is issued to the supreme court. Can an order to the effect that notwithstanding it is removed from before him to the supreme court, still it remains, and shall be deemed to remain, before the officer from whom it is taken, have that effect and make it ubiquitous to that extent?

The case of *Patchin* v. *The Mayor of Brooklyn*, in some of its *obiter dicta* and head notes, seems to conflict somewhat with some of these views, I am aware, but I think that nothing decided in that case does conflict materially with them.

The fatal effects of the writ to this proceeding, the fact that it terminates and for all practical purposes annihilates the whole matter, would be excellent ground for an argument to the legislature to show the necessity of a modification of the law, perhaps, and could possibly have been properly addressed to the court in opposition to the allowance of this writ in the first instance, and it may be of service on the motion to quash it, if such a motion should ever be made, but it can have but little weight with me in determining what are the legal consequences of the writ when allowed and in force.

That the court misunderstood the situation of the proceeding at the time of the allowance of the writ, and would not have allowed it if it had correctly understood it, may also be a good argument on a motion to the same court to quash it; but I cannot know the fact, and if I could, such knowledge would not properly be the basis of action by me. I am to obey the writ as it is, so long as it continues to stand, not to indulge in speculations as to what might or would have been done by the court under other circumstances. My duties depend on what the writ is, not at all on what it might have been, or what was the intent of the court at the time, even if I could know that intent, except as it

In the matter of Conover v. Devlin.

is expressed by the fact of allowing it. The fact that the court refused to grant a stay of the proceedings asked in connection with it, and the fact that the same court which made the allowance has since made the order above referred to, seems to show, by double proof, that it was not the intention of the court that any thing having the effect of stay should receive its sanction ; and this fact would probably control, on an application to that court, in which alone the impediment complained of can be removed.

It was urged, also, that the signing and delivery of these warrants were judicial acts, and that therefore they were not restrained by the *certiorari*. But my judgment has not only been announced orally, but reduced to writing in the form of an order, and signed by me and delivered to the applicant. I have there decided that the applicant was entitled to the relief asked, that he should have the warrants. Is it possible that the writing of these papers, and signing and delivering them, are judicial acts? And even if they were, they are, so far, separate acts, distinct from the previous proceedings at the trial, that the principle which authorizes the completion of a trial because it is begun—as in the case where the venire had been awarded—(1 *Bac. Abr. tit. Certiorari*, 560, *and* 2 *Hawk. P. C. ch.* 27, § 30,) would not apply here to justify me in proceeding. But it seems to me that it certainly is not a judicial but a ministerial act, and that, therefore, I am bound to refrain.

Finally, I see no mode of escape from the restraining influence of this writ, while it remains in force. The only way of escape for the applicant seems to be through the court granting it, and to that court I must commend him. My hands are certainly bound, and I see no hope of disinthrallment save by the removal of the bonds by the revocation or supersedeas of the writ itself. I am accordingly constrained to suspend my proceedings and decline, for the present, to issue the warrants.

[New York Special Term, July 17, 1857. *Peabody*, Justice.]